**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (JP 9071)
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE AUTHORS GUILD, INC., ET AL.,<br><br>                              Plaintiffs,<br><br>          v.<br><br>HATHITRUST, ET AL.,<br>                              Defendants. | Case No. 11 Civ. 6351 (HB) |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
**BASED UPON LACK OF SUBJECT MATER JURISDICTION**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND RELATED TO THE ORPHAN WORKS PROJECT ....................2

ARGUMENT ..........................................................................................................4

I.    Legal Standard Under Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(b)(1). .........................4

II.   The Associational Plaintiffs Lack Standing For Works In Which They Do Not
      Hold a Copyright.................................................................................................6

      A.    Associational Standing Is Not Permitted Under the Copyright Act. ......................6

      B.    Even If Associational Standing Were Permitted Under the Copyright Act,
            the Associational Plaintiffs Have Not and Cannot Satisfy the
            Requirements. ..........................................................................................8

            1.   The Associational Plaintiffs Have Not Adequately Alleged That
                 Their Members Would Have Standing To Sue In Their Own Right. ..........8

            2.   Plaintiffs' Claims Would Require the Participation of Individual
                 Members of the Associational Plaintiffs.................................................10

III.  All of the Plaintiffs Lack Standing As to the Orphan Works Project Claims....................14

IV.   Plaintiffs' Claims Based on the Orphan Works Project are Not Ripe For
      Adjudication.....................................................................................................18

CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.,*
   944 F.2d 971 (2d Cir. 1991) .................................................................................. 7

*Arista Records LLC v. Usenet.com, Inc.,*
   No. 07 Civ. 8822, 2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008) ............................. 5

*Association for Information Media and Equipment v. Regents of the University of California,*
   No. CV 10-9378 CBM (C.D. Cal. Oct. 3, 2011) ..................................................... 13

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
   968 F.2d 196 (2d Cir. 1992) .................................................................................. 5

*Bano v. Union Carbide Corp.,*
   361 F.3d 696 (2d Cir. 2004) ................................................................................ 10

*Bread Political Action Comm. v. Fed. Election Comm'n,*
   455 U.S. 577 (1982) ............................................................................................. 6

*Cadence Indus. Corp. v. Ringer,*
   450 F. Supp. 59 (S.D.N.Y. 1978) ........................................................................ 11

*DiMaggio v. Int'l Sports Ltd.,*
   No. 97 Civ 7767, 1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) ............................... 9

*Dow Jones & Co. v. Harrods, Ltd.,*
   237 F. Supp. 2d 394 (S.D.N.Y. 2002) ................................................................... 5

*Durham Indus., Inc. v. Tomy Corp.,*
   630 F.2d 905 (2d Cir. 1980) ............................................................................... 11

*Eden Toys, Inc. v. Florelee Undergarment Co.,*
   697 F.2d 27 (2d Cir. 1982) ................................................................................... 7

*Estate of Hogarth v. Edgar Rice Burroughs, Inc.,*
   342 F.3d 149 (2d Cir. 2003) ............................................................................... 11

*Faulkner v. Nat'l Geographic Soc'y,*
   211 F. Supp. 2d 450 (S.D.N.Y. 2002) ................................................................. 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) ........................................................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985) ........................................................................................... 20

## TABLE OF AUTHORITIES

Page

*Hayes v. Carlin Am., Inc.,*
168 F. Supp. 2d 154 (S.D.N.Y. 2001) .......................................................... 19, 20

*Hofheinz v. Discovery Commc'ns, Inc.,*
No. 00 Civ. 3802, 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001) ........................... 14

*Hunt v. Wash. State Apple Adver. Comm'n,*
432 U.S. 333 (1977) .................................................................... 8, 9, 10, 12, 13

*Irish Lesbian & Gay Org. v. Giuliani,*
143 F.3d 638 (2d Cir. 1998) ...................................................................... 8

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
153 F.3d 82 (2d Cir. 1998) ...................................................................... 8

*Kelly v. L.L. Cool J.,*
145 F.R.D. 32 (S.D.N.Y.),
*aff'd,* 23 F.3d 398 (2d Cir. 1992) .............................................................. 9

*Laine v. Pride,*
No. 09 CV 3057, 2010 WL 199927 (S.D.N.Y. Jan. 19, 2010) ................................... 9

*Lujan v. Defenders of Wildlife,*
504 U.S. 555, 112 S. Ct. 2130 (1992) ................................................... 14, 16, 17

*Makarova v. United States,*
201 F.3d 110 (2d Cir. 2000) ...................................................................... 4

*Malik v. Meissner,*
82 F.3d 560 (2d Cir. 1996) ...................................................................... 5

*Maxtone-Graham v. Burtchaell,*
803 F.2d 1253 (2d. Cir. 1986) ................................................................... 14

*Miller v. Silbermann,*
951 F. Supp. 485 (S.D.N.Y. 1997) ............................................................... 14

*N.Y. Metro Area Postal Union v. Potter,*
No. 00 Civ. 8538, 2003 WL 1701909 (S.D.N.Y. Mar. 31, 2003) ............................... 6

*National Association of Freelance Photographers v. Associated Press,*
No. 97 Civ. 2267, 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ............................... 12

*Ocasek v. Hegglund,*
116 F.R.D. 154 (D. Wyo. 1987) ................................................................... 7

*Pannonia Farms, Inc. v. USA Cable,*
No. 03 Civ. 7841, 2004 WL 1276842 (S.D.N.Y. June 8, 2004) ................................ 7

iii

## <u>TABLE OF AUTHORITIES</u>

Page

*Patino v. Chertoff,*
   595 F. Supp. 2d 310 (S.D.N.Y. 2009) ................................................................. 5

*Plunket v. Doyle,*
   No. 99 Civ. 11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ..................... 7, 9, 15

*Reed Elsevier, Inc. v. Muchnick,*
   130 S. Ct. 1237 (2010) ........................................................................................ 9

*Reid v. Dep't of Commerce,*
   793 F.2d 277 (Fed. Cir. 1986) ........................................................................... 6

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins,*
   5 F.3d 591 (2d Cir. 1993) ................................................................................... 10

*Rosemont Enters., Inc. v. Random House, Inc.,*
   366 F.2d 303 (2d Cir. 1966) ......................................................................... 14, 20

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.,*
   55 F.3d 756 (2d Cir. 1995) ................................................................................. 11

*Shipping Fin. Servs. Corp. v. Drakos,*
   140 F.3d 129 (2d Cir. 1998) ............................................................................... 5

*Tasini v. N.Y. Times Co.,*
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ............................................................... 5

*The Authors Guild, Inc. v. Google Inc.,*
   Case No. 05 CV 8136 (S.D.N.Y.) ...................................................................... 11

*Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.,*
   626 F.2d 1171 (5th Cir. 1980) ........................................................................... 20

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
   517 U.S. 544 (1996) ........................................................................................... 10

*United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.,*
   207 F.3d 1193 (10th Cir. 2000) ......................................................................... 6

*United States v. Comprehensive Cmty. Dev. Corp.,*
   152 F. Supp. 2d 443 (S.D.N.Y. 2001) ............................................................... 4

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
   454 U.S. 464 (1982) ........................................................................................... 14

*Weisman v. Internal Revenue Serv.,*
   972 F. Supp. 185 (S.D.N.Y. 1997) .................................................................... 4

iv

## <u>TABLE OF AUTHORITIES</u>

Page

*Whimsicality, Inc. v. Rubi's Costume Co.*,
    891 F.2d 452 (2d Cir. 1989) ................................................. 11

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991) ................................................. 13

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ................................................. 6


**Statutes**

17 U.S.C. § 101 ........................................................................ 9

17 U.S.C. § 107 ........................................................................ 13

17 U.S.C. § 107(4) .............................................................. 14, 20

17 U.S.C. § 201(b) ..................................................................... 11

17 U.S.C. § 405(a) ..................................................................... 11

17 U.S.C. § 410(c) ..................................................................... 11

17 U.S.C. § 411(a) ..................................................................... 9

17 U.S.C. § 501(b) ......................................................... 6, 7, 8, 15


**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .............................................................. 4

Fed. R. Civ. P. 12(b)(6) .............................................................. 9

Fed. R. Civ. P. 12(c) ............................................................. 2, 4

Fed. R. Civ. P. 8(a)(1) ............................................................. 5


**Treatises**

13A Charles Alan Wright et al.,
    *Federal Practice and Procedure* § 3531.9.5 (3d ed. 2011) ....................... 6

2 Alexander Lindey and Michael Landau, *Lindey on Entertainment,*
    *Publishing and the Arts* § 5:14 (3d ed. 2011) ................................ 11

5B Charles Alan Wright et al.,
    *Federal Practice and Procedure* § 1350 (3d ed. 2011) ........................ 5

## <u>TABLE OF AUTHORITIES</u>

Page

5C Charles Alan Wright et al.,
 *Federal Practice and Procedure* § 1367 (3d ed. 2011) ............................................................ 4

6 William F. Patry, *Patry on Copyright* § 21:28 (2011) ................................................................ 7

STAFF OF S. COMM. ON THE JUDICIARY (BARBARA A. RINGER),
 86th CONG., RENEWAL OF COPYRIGHT 31 (Comm. Print 1960) ................................................. 11

## INTRODUCTION

Plaintiffs have asserted claims for copyright infringement against Defendants HathiTrust;[1] Mary Sue Coleman, President of The University of Michigan ("UM"); Mark G. Yudof, President of The University of California ("UC"); Kevin Reilly, President of The University of Wisconsin System ("UW"); Michael McRobbie, President of Indiana University ("IU"); and Cornell University (collectively, the "Universities") for the alleged unauthorized reproduction and distribution of books owned by the Universities' libraries. (Am. Compl. ¶¶ 81-87.) In some cases, Plaintiffs have asserted these claims with respect to specific works by specific authors, which Exhibit A to the FAC identifies. (*Id.* ¶¶ 13, 22-33, Ex. A.) In other cases, Plaintiffs appear to assert claims not in their individual capacity but rather on behalf of unidentified members of the "Associational Plaintiffs."[2] (*Id.* ¶¶ 12-20.) For these claims, Plaintiffs have not identified the work(s), the copyright holder of the work(s), the copyright registration number for the work(s), or any other information about the work(s) allegedly infringed. (*See id.*) Finally, Plaintiffs' lawsuit includes claims that possible uses in connection with UM's "Orphan Works Project" of works published between 1923 and 1963 will constitute violations of the Copyright Act (Am. Compl. ¶¶ 73-79, 85-86)—even though, as Plaintiffs are aware, **not one single work has been or will be distributed or displayed** through the Orphan Works Project until a new list of orphan works candidates has been finalized and the bibliographic information for such candidates has been published. (Am. Compl. ¶ 74; December 28, 2011 Declaration of Joseph Petersen ("Petersen Decl.") Ex. A-C.) Moreover, Defendants

---

[1] As represented and warranted by the Defendants in the above-captioned action, "HathiTrust" is the name of a service of UM in which Universities and other institutions participate under agreements with UM (the "HathiTrust Service"). (Dkt. No. 33.)

[2] The "Associational Plaintiffs" consist of (1) The Authors Guild, Inc., (2) The Authors League Fund, Inc. ("Authors Fund"), (3) The Australian Society of Authors Limited, (4) Authors' Licensing and Collecting Society (UK), (5) Union des Ecrivaines et des Ecrivains Quebecois ("UNEQ"), (6) Sveriges Forfattarforbund ("SFF"), (7) Norsk Faglitteraer Forfatter-og Oversetterforening ("NFF"), and (8) The Writers' Union of Canada ("TWUC").

have committed to providing Plaintiffs with 120-days advance notice before marking *any* work accessible to patrons through the Orphan Works Project. (Petersen Decl., Ex. A.)

For the reasons discussed below, the Associational Plaintiffs lack standing to assert claims for the unidentified works in which their unidentified members allegedly hold copyright, and all such claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(c). Moreover, all of the Plaintiffs lack standing to assert claims with respect to the Orphan Works Project; and the claims based on the Orphan Works Project are not ripe for adjudication. Accordingly, all claims based on the Orphan Works Project also should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(c).

## FACTUAL BACKGROUND RELATED TO THE ORPHAN WORKS PROJECT

In the FAC, Plaintiffs seek a declaration that "Defendants' distribution and display of copyrighted works through the HathiTrust Orphan Works Project will infringe the copyrights of Plaintiffs and others likely to be affected" and request an injunction enjoining the Universities from "proceeding with the HathiTrust Orphan Works Project, including without limitation, from displaying, distributing or otherwise making available any so-called orphan works protected by copyright." (Am. Compl. ¶¶ (a)(ii), (b)(iii).) As Plaintiffs have defined it in the FAC, the Orphan Works Project ("OWP") is "an initiative to identify and make available online to University students, faculty and library patrons full copies of so-called 'orphan works'—works that are protected by copyright but whose rights holders theoretically cannot be located by procedures established by HathiTrust . . . ," (Am. Compl. ¶ 3), with an initial focus on works published in the United States between 1923 and 1963 (Am. Compl. ¶ 73).[3] In Paragraph 74 of the FAC, Plaintiffs note that the OWP process includes the listing of bibliographic information for certain

---

[3] For purposes of this Motion only, the Universities will consider as true the factual allegations of the FAC cited herein.

works on the "HathiTrust Orphan Candidates webpage" for ninety days before such works would be made available through the OWP. (Am. Compl. ¶ 74.) The "HathiTrust Orphan Candidates webpage" referred to in Paragraph 74 of the FAC is available at http://orphanworks.hathitrust.org/ and is titled "HathiTrust Digital Library – Orphan works candidates." A print-out of this webpage is attached as Exhibit B to the Petersen Declaration filed in support of this Motion.

The parties agree that the bibliographic information for a list of works was posted on the "HathiTrust Digital Library – Orphan works candidates" webpage on or about July 15, 2011. (Am. Compl. ¶ 76; Answer ¶ 76.) Prior to the expiration of ninety days (and thus before any of the works were made available through the OWP) (*cf.* Am. Compl. ¶ 74), on September 16, 2011, UM withdrew from the "HathiTrust Digital Library – Orphan works candidates" webpage the bibliographic information for the initial list of orphan works candidates (Petersen Decl., Exs. A-B), and the UM Library in Ann Arbor ("MLibrary") issued the following statement on its website, a printout of which is attached as Exhibit C to the Petersen Declaration filed in support of this Motion:

> The close and welcome scrutiny of the list of potential orphan works has revealed a number of errors, some of them serious. This tells us that our pilot process is flawed.
>
> Having learned from our mistakes—we are, after all, an educational institution— we have already begun an examination of our procedures to identify the gaps that allowed volumes that are evidently not orphan works to be added to the list. Once we create a more robust, transparent, and fully documented process, we will proceed with the work, because we remain as certain as ever that our proposed uses of orphan works are lawful and important to the future of scholarship and the libraries that support it.
>
> It was always our belief that we would be more likely to succeed with the cooperation and assistance of authors and publishers. This turns out to be correct. The widespread dissemination of the list has had the intended effect: rights holders have been identified, which is in fact the project's primary goal. And as a

result of the design of our process, our mistakes have not resulted in the exposure
of even one page of in-copyright material.

(Am. Compl. ¶ 78; Petersen Decl., Ex. C.) As noted in the FAC, the MLibrary's September 16,

2011 statement quoted above conveys that UM will "proceed with the work" of the OWP

without specifying a date certain (*Id.*), but rather "[o]nce [it] create[s] a more robust, transparent,

and fully documented process" (Petersen Decl., Ex. C).

In addition, on October 14, 2011, counsel for the Universities sent to counsel for

Plaintiffs a letter stating that the Universities had made the unilateral commitment that no orphan

works will be made accessible without the prior publication of the list of orphan works

candidates, and that Universities "will provide Plaintiffs 120-days advance notice before making

*any* work accessible to patrons through the Orphan Works Project." (*Id.*, Ex. A.) As of the filing

this motion, no new orphan works candidates have been published on the "HathiTrust Digital

Library – Orphan works candidates" webpage. (*See id.*, Ex. B.)

ARGUMENT

I.      **Legal Standard Under Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(b)(1).**

"A Rule 12(c) motion for judgment on the pleadings based upon a lack of subject matter

jurisdiction is treated as a Rule 12(b)(1) motion to dismiss the complaint." *United States v.*

*Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 448-49 (S.D.N.Y. 2001); *accord*

*Weisman v. Internal Revenue Serv.*, 972 F. Supp. 185, 186-87 (S.D.N.Y. 1997); *see also* 5C

Charles Alan Wright et al., *Federal Practice and Procedure* § 1367 (3d ed. 2011).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists." *Id.* (affirming dismissal); *accord Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (same).

A motion for lack of subject matter jurisdiction "may contest either the facial sufficiency of the pleadings in the complaint or the existence of subject matter jurisdiction in fact." *Patino v. Chertoff*, 595 F. Supp. 2d 310, 312 (S.D.N.Y. 2009). "If the complaint does not properly invoke the district court's jurisdiction, then the complaint is defective, and . . . the motion to dismiss must be granted regardless of the actual existence of subject matter jurisdiction." 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1350 (3d ed. 2011). On the other hand, a lack of subject matter jurisdiction in fact "may exist despite the formal sufficiency of the Rule 8(a)(1) allegations in the complaint." *Id.*

In the case of a *facial* challenge, "the court accepts as true the uncontroverted factual allegations in the complaint." *Dow Jones & Co. v. Harrods, Ltd.,* 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002). Nevertheless, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). Moreover, "'**jurisdiction must be shown affirmatively**, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822, 2008 WL 4974823, at *2 (S.D.N.Y. Nov. 24, 2008) (Baer, J.) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (emphasis added).

If the motion to dismiss asserts a *factual* challenge to the complaint, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (internal quotation and citations omitted). "[T]he

court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## II.     The Associational Plaintiffs Lack Standing For Works In Which They Do Not Hold a Copyright.

### A.     Associational Standing Is Not Permitted Under the Copyright Act.

Where a statute "bars an action by representation, an organization should not be able to borrow a member's standing." 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.9.5 (3d ed. 2011). "Jurisdictional statutes are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes." *Bread Political Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 580, 585 (1982) (internal quotations omitted) (finding trade associations and political action committees lacked standing where they had "not met the burden of showing such 'clear expression' or 'clear evidence' of congressional intent to make the procedures [at issue] available to categories of plaintiffs other than those listed in that section"); *see also N.Y. Metro Area Postal Union v. Potter*, No. 00 Civ. 8538, 2003 WL 1701909, at *2 (S.D.N.Y. Mar. 31, 2003) (associational standing barred under Family Medical Leave Act); *United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1201 (10th Cir. 2000) (Fair Labor Standards Act); *Reid v. Dep't of Commerce*, 793 F.2d 277, 282 (Fed. Cir. 1986) (Civil Service Reform Act). The Copyright Act plainly falls within the category of statutes that bar associational standing.

Section 501(b) of the Copyright Act of 1976 provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of [registration under] Section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The Second Circuit has

6

interpreted § 501(b) to limit standing to two types of claimants: '(1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.'" *Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252, at *5 (S.D.N.Y. Feb. 22, 2001) (quoting *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982)) (finding plaintiff lacked standing to sue for copyright infringement); *see also Pannonia Farms, Inc. v. USA Cable*, No. 03 Civ. 7841, 2004 WL 1276842, at *5 (S.D.N.Y. June 8, 2004) (same), *aff'd in part, dismissed in part*, 426 F.3d 650 (2d Cir. 2005).

The language of Section 501(b), thus, makes clear that "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *see also Eden Toys*, 697 F.2d at 32 n.3 ("We do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf."); *Ocasek v. Hegglund*, 116 F.R.D. 154, 157 (D. Wyo. 1987) ("ASCAP's Achilles' heel, if it has one, is that it lacks standing to sue for infringement of its members' copyrights."); 6 William F. Patry, *Patry on Copyright* § 21:28 (2011) ("[A]ssociational standing is not permitted under the Copyright Act, which expressly limits standing to legal or beneficial owners of exclusive rights."). Even though the Federal Rules of Civil Procedure generally permit a real party in interest to ratify a suit brought by another party, the Copyright Act is "quite specific" in stating that **only** an "'owner of an exclusive right under a copyright'" may bring suit under the Act. *Eden Toys*, 697 F.2d at 32 n.3 (quoting 17 U.S.C. § 501(b)). Thus, where a plaintiff is not the "legal or beneficial owner of an exclusive right under a copyright," it does not have standing to sue for copyright infringement under the Copyright Act.[4] *Plunket*, 2001 WL 175252, at *5 (dismissing for lack of standing).

---

[4] For the works created and first published abroad, foreign law likely will govern determination of the "legal or beneficial owner of an exclusive right." It is possible that some of the Associational Plaintiffs will have standing

7

With the exception of the one work identified in Exhibit A in which Plaintiff Authors Fund allegedly holds copyright, the Associational Plaintiffs have not alleged that they are a "legal or beneficial owner of an exclusive right under a copyright," 17 U.S.C. § 501(b), and therefore they lack standing to file this copyright infringement action for injunctive and declaratory relief.

**B.     Even If Associational Standing Were Permitted Under the Copyright Act, the Associational Plaintiffs Have Not and Cannot Satisfy the Requirements.**

To establish associational standing, an organization must satisfy a three-part test:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998). Even assuming that associational standing is permitted under the Copyright Act, Plaintiffs cannot satisfy the first and third prongs of the *Hunt* test.

**1.     The Associational Plaintiffs Have Not Adequately Alleged That Their Members Would Have Standing To Sue In Their Own Right.**

The Associational Plaintiffs have alleged that unidentified "[m]embers of the Associations would have standing to sue in their own rights" (Am. Compl. ¶ 20), but this

---

with respect to some works because of the unique statutory framework of another country. For example, in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998), the Second Circuit held that Russian law governed who had standing to sue for the infringement of newspaper articles written by Russian nationals and first published in Russia. *Id.* at 90-91. Russian copyright law, the court noted, "authorizes the creation of organizations 'for the collective administration of the economic rights of authors . . . in cases where the individual exercise thereof is hampered by difficulties of a practical nature,'" *id.* at 93 (quoting Russian Copyright Law, Art. 44(1)), and thus the writers union could bring claims under Section 501 to protect the rights of its members. *See id.*

8

conclusory allegation is insufficient to establish their members' standing to sue for copyright infringement.[5]

Courts in this district have required plaintiffs in copyright cases to allege: "(1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute;[6] and (4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y.), *aff'd*, 23 F.3d 398 (2d Cir. 1992); *accord Laine v. Pride*, No. 09 CV 3057, 2010 WL 199927, at *6-7 (S.D.N.Y. Jan. 19, 2010) (Baer, J.) (applying these factors); *DiMaggio v. Int'l Sports Ltd.*, No. 97 Civ. 7767, 1998 WL 549690, at *1-2 (S.D.N.Y. Aug. 31, 1998) (Baer, J.) (same). The first and second of these requirements are necessary to allege that the Associational Plaintiffs' members have standing.[7] *See Plunket*, 2001 WL 175252, at *5.

The Associational Plaintiffs have not made any specific allegations with respect to any copyrighted works held by their members and therefore have failed to satisfy the first prong of the *Hunt* test. The court should dismiss the Associational Plaintiffs' claims as to alleged infringement of their members' works on this basis alone.

---

[5] Moreover, this one conclusory allegation was not even made with respect to Plaintiff Authors Fund. (*See* Am. Compl. ¶ 20 (defining "Associations" not to include Authors Fund).)

[6] Alternatively, the plaintiff could allege a basis for finding a particular book is not a "United States work," *see* 17 U.S.C. § 101, and thus that the registration requirement does not apply, *see* 17 U.S.C. § 411(a).

[7] The third requirement was previously considered jurisdictional, but the Supreme Court recently held that the registration requirement in Section 411 is an element of a cause of action. *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248 (2010). Accordingly, if the Associational Plaintiffs amend their pleadings to allege their members' copyright in specific works, they still would need to make sufficient allegations as to a registration in order to survive a motion to dismiss under Rule 12(b)(6).

### 2. Plaintiffs' Claims Would Require the Participation of Individual Members of the Associational Plaintiffs.

The Associational Plaintiffs' allegation as to the third prong of the *Hunt* test is limited to one sentence: "Individual participation of each author is not required to determine whether the Universities' systematic digitization of their libraries and planned dissemination of orphan works violates the Copyright Act or to grant injunctive relief for the benefit of all members of the Associations and other authors and owners of copyrighted works." (Am. Compl. ¶ 20.) This statement is both facially insufficient and factually unsupported.

An organization will lack associational standing to bring a claim for injunctive or declaratory relief on behalf of its members if the "fact and extent" of the injury giving rise to the claim would require individualized proof.[8] *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004); *see also Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (finding association lacked standing to assert claims for injunctive and declaratory relief). The Associational Plaintiffs cannot meet this prong of the *Hunt* test because their claims for declaratory and injunctive relief regarding the Universities' alleged copyright infringement require individualized proof. To establish infringement, the Associational Plaintiffs must prove, among other elements, "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Each of these elements requires *individualized* allegations and proof by each individual copyright holder.

---

[8] The Supreme Court has clarified that the third prong of the *Hunt* test is prudential rather than constitutional and thus may be abrogated by Congress. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 558 (1996). Nevertheless, it is evident that Congress has not abrogated these prudential limitations for claims under the Copyright Act. *See supra* Section II.A.

Among the issues that could arise regarding a members' purported copyrights, there may be questions about validity;[9] whether the rights in the author's book have reverted from the publisher;[10] whether the original copyright registration was properly renewed (if it were not, the work passed into the public domain);[11] whether the work was created as a work made for hire;[12] whether the author's books were published with proper copyright notice;[13] or whether an

---

[9] Although a copyright registration establishes *prima facie* ownership and validity provided that the work is registered before or within five years after first publication of the work, 17 U.S.C. § 410(c), the Copyright Office takes statements in the copyright application at face value and conducts no independent investigation of ownership or validity. *See, e.g., Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003) (distinguishing the Copyright Office's "necessarily limited" examination of applications from the Patent and Trademark Office's examination process, stating that "[t]he Office does not make factual determinations with respect to publication or any other act done outside of the Office" and "will register adverse claims by more than one party," which are "not unusual") (internal citations omitted); *Cadence Indus. Corp. v. Ringer*, 450 F. Supp. 59, 65-66 (S.D.N.Y. 1978) ("It is undisputed that the Copyright Office has neither the facilities nor the authority to rule upon the factual basis of applications for registration or renewal[.]"). The presumption may be rebutted by showing a lack of independent creation or originality or a transfer of rights, among other defenses. *See, e.g., Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908-11 (2d Cir. 1980) (finding presumption rebutted because of lack of requisite originality); *cf. Whimsicality, Inc. v. Rubi's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989) (finding presumption rebutted because of the plaintiff's misrepresentations to the Copyright Office).

[10] Under many book publishing contracts, the copyright in the book reverts to the author once the work is deemed "out of print," and in some cases, the author must affirmatively seek a reversion. *See, e.g.,* 2 Alexander Lindey and Michael Landau, *Lindey on Entertainment, Publishing and the Arts* § 5:14 (3d ed. 2011) (out-of-print provision included as Paragraph 16 in Random House form agreement for book publications); February 11, 2009 Decl. of Paul Aiken in Supp. of Pls.' Mot. for Final Approval of Am. Settlement Agreement, *The Authors Guild, Inc. v. Google Inc.*, Case No. 05 CV 8136 (S.D.N.Y.), *in* Understanding Copyright Law 2010 (Practicing Law Institute, 2010) ("Typical publishing contracts permit authors to demand a reversion of rights (effectively, a termination of the author-publisher contract) when their books go out of print.").

[11] Registered works published between 1923 and 1963 required a copyright renewal registration to maintain copyright protection. *See Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 463-64 (S.D.N.Y. 2002) ("Under the 1909 Act, which applies for purposes of determining duration of copyright to works that first were published prior to January 1, 1964, an author was entitled to an initial twenty-eight year copyright term, which expired unless the copyright was renewed by the author or his statutory successors during the final year of the initial term. Failure to make a renewal application during the twenty-eighth year resulted in the work entering the public domain."). **A 1960 Copyright Office study found that only 7% of books were renewed.** *See* STAFF OF S. COMM. ON THE JUDICIARY (BARBARA A. RINGER), 86th CONG., RENEWAL OF COPYRIGHT 31, at 220 (Comm. Print 1960).

[12] The copyright in works created by authors within the scope of their employment would be held by the authors' employer as a "work made for hire." 17 U.S.C. § 201(b).

[13] Under the 1909 Copyright Act, publication of a work without proper copyright notice divested the work of copyright protection. *Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 759 (2d Cir. 1995). For works published between January 1, 1978 (the effective date of the 1976 Copyright Act) and March 1, 1989 (the effective date of the Berne Convention Implementation Act), omission of notice was excused in certain limited circumstances. 17 U.S.C. § 405(a).

individual author authorized the digitization of a book.[14] Resolution of each of these issues would require participation by each purported copyright holder.

For these reasons, courts addressing associational standing for copyright claims have deemed the individual copyright holders necessary participants.[15] For example, in *National Association of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267, 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997), three individual freelance photographers and the non-profit organization with which they were affiliated (collectively, the "NAFP") asserted antitrust and copyright infringement claims against the Associated Press ("AP") based on AP's practice of requiring the freelance photographers from which it bought photographs to assign their copyrights in the photographs to AP as a condition of the sale. *Id.* at *1. The dispute centered around a legend placed by AP on the checks it issued to the photographers which purported to transfer all copyrights in the photographs to AP upon endorsement of the checks. *Id.* at *2. The NAFP sought declaratory and injunctive relief based on the injuries allegedly suffered by its members and AP argued that NAFP did not qualify for associational standing. *Id.* at *4.

The court held that NAFP failed to satisfy the third prong of the *Hunt* test because "[a]ny judicial determination on the claims in this lawsuit requires proof regarding individual claimants, for example, whether given payment checks were effective to transfer copyright to AP in light of all the circumstances under which the checks were endorsed by Freelance Photographers." *Id.* at *5. The court held that it could not evaluate NAFP's claim without the participation of the individual photographers and presentation of evidence as to the discrete circumstances

---

[14] Indeed, Plaintiffs appear to acknowledge this possibility. *See* Am Compl. ¶ 21.

[15] The cases discussed in the text did not address whether the Copyright Act precludes associational standing, nor did they need to because both cases found that the associational standing requirements had not been satisfied.

12

substantiating each claim for copyright infringement. *See id.* Accordingly, the court dismissed NAFP's claims for injunctive and declaratory relief for lack of standing.

Similarly, in *Association for Information Media and Equipment v. Regents of the University of California*, No. CV 10-9378 CBM (C.D. Cal. Oct. 3, 2011) (order granting motion to dismiss), the Association for Information Media and Equipment ("AIME") asserted copyright claims against the Regents of the University of California, among others, for making a DVD of "The Plays of William Shakespeare" available to UCLA faculty and students over the Internet. *Id.* at 2. AIME sought declaratory and injunctive relief, in addition to damages. *Id.* at 13. The court held that AIME could not satisfy the third prong of the *Hunt* test: "In order to establish a claim for copyright infringement, individual copyright owners' participation is necessary. This is because having the rights over a copyright is essential to establishing a copyright infringement claim." *Id.* at 7. AIME argued that individual participation would not be necessary for the claim for declaratory relief, but the court disagreed, finding that "the scope of that declaratory relief would be limited by the rights that members have over the copyrights." *Id.* This Court should likewise find that questions about who holds the copyrights in the digitized books preclude the Associational Plaintiffs from establishing associational standing.

In addition, individual participation of the Associational Plaintiffs' members also will be necessary to determine whether the Universities are engaged in fair use, which is a highly fact-specific inquiry.[16] *Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir. 1991) ("The fair use test remains a totality inquiry, tailored to the particular facts of each case."). For example, one of the relevant considerations under fair use is whether the copyrighted work is "out of print."

---

[16] Section 107 of the Copyright Act requires courts to consider the following four non-exclusive factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

*Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1264 n.8 (2d. Cir. 1986) (noting that out-of-print status of book provided additional support for finding of fair use). This will require individualized proof for each work alleged to have been infringed. Moreover, the fourth fair use factor, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), also requires an inquiry that is specific to each work alleged to have been infringed. *See Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 Civ. 3802, 2001 WL 1111970, at *6 (S.D.N.Y. Sept. 20, 2001) (Baer, J.) (noting that if there was a market for the plaintiff's film, which was not being sold or rented, it was diminutive). The members' motives for seeking to enjoin the Universities' uses also may factor into the analysis. *See Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 313 (2d Cir. 1966) (Lumbard & Hays, JJ., concurring). The fair use issues provide further support for rejecting the Associational Plaintiffs' assertion of standing.

### III.    All of the Plaintiffs Lack Standing As to the Orphan Works Project Claims.

To establish the requisite standing to bring suit, Article III of the Constitution requires that, at an "irreducible minimum," a plaintiff must prove that (1) it has personally suffered some actual or threatened injury as a result of defendant's conduct, (2) the injury is fairly traceable to the challenged action, and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Miller v. Silbermann*, 951 F. Supp. 485, 489 (S.D.N.Y. 1997). The first prong of the test, known as the "injury-in-fact" standard, requires that plaintiff demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (internal quotations and citations omitted). A speculative injury will not support a finding of standing, rather  the injury must be "sufficiently real and immediate." *Miller*, 951 F.

Supp. at 489. Moreover, under the Copyright Act, only the copyright holder or an exclusive licensee of the copyright has standing to bring a copyright infringement claim. *See* 17 U.S.C. § 501(b); *Plunket v. Doyle*, 2001 WL 175252, at *5 (as quoted above, stated that "[t]he Second Circuit has interpreted § 501(b) to limit standing to two types of claimants: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.") (internal quotation marks omitted). Because none of the Plaintiffs can demonstrate a concrete injury to an exclusive right under the Copyright Act that has actually occurred or that will be imminently caused by the OWP, they fail to meet the first prong of the standing test, and their claims with respect to the OWP must be dismissed for lack of subject matter jurisdiction.

In the FAC, Plaintiffs seek a declaration that "Defendants' distribution and display of copyrighted works through the OWP will infringe the copyrights of Plaintiffs and others likely to be affected," as well as an injunction enjoining the Universities from "proceeding with the HathiTrust Orphans Work Project, including without limitation, from displaying, distributing or otherwise making available any so-called orphan work protected by copyright." (Am. Compl. ¶¶ (a)(ii), (b)(iii).) Plaintiffs do not have standing to bring these claims, however, because they cannot identify any (1) actual or (2) imminent, non-conjectural injury to a legal interest protected under the Copyright Act. First, Plaintiffs do not and cannot allege any actual injury from distribution or display of works through the OWP, as no works have been made available yet through the OWP. (Am. Compl. ¶¶ 74, 76, 78; Petersen Decl., Exs. A-C.)

Second, Plaintiffs cannot establish any imminent, non-conjectural injury to an exclusive right under copyright. Plaintiffs allege that "distribution and display of copyrighted works through the HathiTrust Orphan Works Project **will** infringe the copyrights of Plaintiffs." (Am. Compl. ¶ (a)(ii) (emphasis added).) However, Plaintiffs have not identified any works for which

they hold an exclusive right under copyright that *will be* displayed, distributed, or otherwise made available through the OWP, imminently or any time in the future.

Nor can they, as discussed above, the previously-posted list of orphan works candidates has been removed from the "HathiTrust Digital Library – Orphan works candidates" webpage (Petersen Decl., Exs. A-B), and no new list of orphan works candidates has been published on the "HathiTrust Digital Library – Orphan works candidates" webpage (*Id.*, Ex. B). New orphan works candidates will not be announced until after the OWP's due diligence process has been redesigned and the review of in-copyright volumes in the HathiTrust Digital Library has been completed under that redesigned process (*Id.*, Exs. B-C), and it would be pure conjecture to assert that a work for which one of the Plaintiffs is the copyright holder will be included on such a future list.

Plaintiffs have identified in the FAC two works in which they claim copyright that were included in the previously-posted list of orphan works candidates that was taken down on September 16, 2011. (Am. Compl. ¶¶ 13, 29; Petersen Decl., Exs. B-C.) However, the listing of bibliographic information for works in which Plaintiffs claim copyright on the "HathiTrust Digital Library – Orphan works candidates" does not constitute copyright infringement, and the fact that a work may have been included as an orphan works candidate before UM began redesigning the OWP cannot establish actual or imminent harm from future display or distribution of works identified under the new process that is still being created. Indeed, as recognized in *Lujan v. Defenders of Wildlife* in a different context, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." 504 U.S. at 564. Moreover, the past

conduct here—posting on a website bibliographic information for works in which a plaintiff claims to hold copyright—is not a violation of any law.

In *Lujan*, environmental groups were challenging the scope of a regulation under the Endangered Species Act because it did not extend to foreign nations. *Id.* at 557-58. The court found that the plaintiffs failed to establish standing because they did not demonstrate an imminent injury. *Id.* at 562-67. The court rejected as evidence of imminent injury plaintiffs' affidavits stating that two of their members had previously visited (before the projects began) areas in foreign countries where projects were allegedly causing harmful effects on endangered species and intended to visit those areas again to observe the endangered species. *Id.* at 563-64. The court stated that the fact that the affiants visited the habitat areas before the allegedly harmful projects began proved nothing with respect to imminent harm resulting from those projects. *Id.* at 564. Likewise, here, the fact that Plaintiffs claim to hold the copyright in two works included on the removed list of orphan works candidates does nothing to prove that an imminent harm will result from the future distribution or display of works not yet identified through a redesigned process still under development, or even that harm would have resulted had UM decided to make its intended uses of those works under its original planned timeline, prior to withdrawing the orphan works candidate list and undertaking an examination and redevelopment of its process.

Moreover, in *Lujan,* the plaintiffs' members' intent to visit the endangered species habitat areas some time in the future (when they might potentially experience an actual present adverse effect) also did not demonstrate an imminent injury because the members could not specify *when* they would return to habitat areas again. 504 U.S. at 564. Similarly, here, even if the Plaintiffs could identify a non-conjectural injury that will occur to them after a new orphan works

17

candidates list is posted, we cannot currently know when a new orphan works candidates list will be made available because it will depend on how long it takes to create and implement the UM "more robust, transparent, and fully documented process" for the OWP. (Petersen Decl., Ex. C.) Further, the Universities have committed to give the Plaintiffs 120-days advance notice before any works are made available through the OWP, and any injury that Plaintiffs claim will occur after that time cannot not be characterized as "imminent." (*Id.*, Ex. A.)

Therefore, it is clear that Plaintiffs cannot identify any actual injury that has occurred, or any imminent and non-conjectural injury that will immediately occur, from future distribution or display of yet-unidentified works through the OWP, and therefore Plaintiffs have no standing to bring copyright infringement claims based on such activities.

## IV.     Plaintiffs' Claims Based on the Orphan Works Project are Not Ripe For Adjudication.

Because adjudication of Plaintiffs' claims of infringement based on distribution and display of works through the OWP require analysis of facts that are not yet available, these claims are not justiciable under the ripeness doctrine. As discussed above, no works have been made available yet through the OWP. (Am. Compl. ¶¶ 74, 76, 78; Petersen Decl., Exs. A-C.) In addition, it is not now known when any works *will be* displayed or distributed through the OWP, or what specific works will be made available when that happens.

As discussed above, UM first posted the bibliographic information for its first set of OWP orphan works candidates on the HathiTrust and UM Library websites on or about July 15, 2011. (Am. Compl. ¶ 76; Answer ¶ 76.) As Plaintiffs note in the FAC, the planned procedures for the OWP investigatory process involved posting bibliographic information for identified orphan works candidates on the "HathiTrust Digital Library – Orphan works candidates" webpage for ninety days before any such work would be made available through the OWP. (Am.

Compl. ¶ 74.) After the orphan works candidate bibliographic information was made public, however, information brought to the UM's attention regarding several of the candidates caused UM to examine its OWP process and reevaluate its planned timeline for making works available. (*See* Petersen Decl., Ex. C.) UM withdrew its previously-posted list of orphan works candidates and is working to develop a "more robust, transparent, and fully documented process." (*Id.*, Ex. C.)

"Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies of sufficient immediacy and reality and not hypothetical or abstract dispute[s]." *Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154, 159 (S.D.N.Y. 2001). (internal citations and internal quotation marks omitted). For example, in *Hayes v. Carlin America*, entertainer Isaac Hayes sought a declaratory judgment that he was the holder of both the copyright and the right to collect royalties during the copyright renewal term for certain works, including works that were still in their original copyright term. *Id.* at 155. On the defendants' motions for summary judgment, the court dismissed the claims concerning works that had not yet entered their renewal terms for lack of a present case or controversy, finding that "[a]djudication of the parties' rights concerning the works which have not entered their copyright renewal terms [was] premature." *Id.* at 159-60. The court found that the dispute over who held copyright in the future renewal term royalty rights to be "hypothetical and abstract" because the court could not know whether there would even still be a dispute, or whether it would involve the same parties, by the time the works actually entered their renewal term, and could not know what the relevant facts would be or how the present facts might change in the meantime. *Id.* at 160. The court stated that "[a]ny decision regarding such future rights would be advisory only." *Id.*

19

Here, Plaintiffs seek a declaration of infringement by the eventual distribution or display through the OWP of works yet to be identified by a redesigned process that is not yet finalized. Like Hayes's claims in the *Carlin America* case, Plaintiff is asking the court to adjudicate an issue based on facts that cannot yet be known by seeking an abstract determination of copyright infringement without identification of the specific copyrights that allegedly will be infringed. Moreover, adjudication of Plaintiffs' copyright infringement claims based on the future display or distribution of unidentified works through the OWP will require a determination of whether the Universities' proposed use of such works constitutes fair use. As noted above, fair use is a highly fact-specific inquiry, and "Section 107 requires a case-by-case determination whether a particular use is fair." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985). Application of Section 107 requires analysis of specific facts about the copyrighted work at issue, including the nature of the work—such as whether it is in print or out of print—and "the potential market for or value of the copyrighted work."[17] 17 U.S.C. § 107(4). In addition, because fair use was created to achieve an equitable balance between the author's right to compensation for his work and the public's interest in widest dissemination of ideas and information, the specific process that will be utilized to identify works UM plans to make available through the OWP and the manner in which those works will be made available are likely to be relevant to the Court's assessment. *See, e.g., Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1174 (5th Cir. 1980); *see also Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 307 (2d Cir. 1966) ("To serve [the Constitutional purpose of promoting the progress of science and the useful arts], courts in passing upon particular claims of infringement must occasionally subordinate the copyright holder's interest in a maximum

---

[17] *See supra* note 16 (listing the fair use factors).

financial return to the greater public interest in the development of art, science, and industry.")
(internal quotation marks omitted). Without the identification of the works at issue and facts
regarding the works' characteristics, market, and value, as well as specific facts about the
process used to identify the works and the manner in which identified works are made available,
the Court lacks a sufficiently concrete factual predicate to make a reasoned adjudication as to
copyright infringement and the Universities' rights to fair use.

Because they would require abstract determinations of infringement and fair use without
identification of the works allegedly infringed or any specific facts about the works, their
selection, and their use that are needed to conduct the fair uses analysis, Plaintiffs' claims of
infringement based on distribution and display of unidentified works through the OWP are not
justiciable under the ripeness doctrine.

## CONCLUSION

For the foregoing reasons, the Associational Plaintiffs lack standing to sue for copyright
infringement of unidentified works in which their unidentified members allegedly hold
copyright. Moreover, all of the Plaintiffs lack standing to assert claims with respect to orphan
works candidates not yet identified through the redesigned OWP process that is still under
development, much less posted for further vetting; and these claims also are not ripe.
Accordingly, the Court should dismiss these claims for lack of subject matter jurisdiction.

DATED: December 28, 2011
      New York, New York

Respectfully Submitted,

Joseph Petersen (JP 9071)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

21

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

22