**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (JP 9071)
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE AUTHORS GUILD, INC., ET AL., <br><br>                  Plaintiffs, <br><br>       v. <br><br> HATHITRUST, ET AL., <br><br>                  Defendants. | Case No. 11 Civ. 6351 (HB) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

I.  Associational Plaintiffs Lack Standing. ......................................................................1

    A.  Associational Plaintiffs Have Not Satisfied the First Prong of the
        *Hunt* Test.......................................................................................................1

    B.  Associational Plaintiffs Have Not Satisfied the Third Prong of the
        *Hunt* Test.......................................................................................................2

        1.  Individualized Proof Is Required To Establish That
            Associational Plaintiffs' Members Hold Valid Copyrights. ......................2

        2.  Individualized Proof Is Required To Evaluate Fair Use. ...........................4

II.  Plaintiffs' OWP Claims Must Be Dismissed For Lack of Standing and
    Ripeness. ........................................................................................................5

    A.  Plaintiffs Do Not Have and Never Had Standing. ..................................................6

    B.  Rule 15(c) Does Not Save Plaintiffs' Claims From The Lack of
        Standing That Has Existed at All Stages of This Action. ........................................7

    C.  The Voluntary Cessation Doctrine Does Not Apply. ..............................................8

    D.  Plaintiff's OWP Claims Are Not Ripe....................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)..............................................5

*AIME v. UCLA*, No. 10 Civ. 9378 (C.D. Cal. Oct. 3, 2011).........................................................3

*Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d Cir. 1994)..........................................5

*Collezione Europa U.S.A., Inc. v. Amini Innovation Corp.*, No. 06-4929, 2009 WL
2634648 (D.N.J. Aug. 26, 2009).................................................................................................7

*Connecticut v. Duncan*, 612 F.3d 107 (2d Cir. 2010)................................................................10

*Dean v. Blumenthal,* 577 F.3d 60 (2d Cir. 2009).........................................................................9

*Doe v. O'Bannon*, 91 F.R.D. 442 (E.D. Pa. 1981).......................................................................7

*E.I. DuPont de Nemours & Co. v. INVISTA B.V*, 473 F.3d 44 (2d Cir. 2006) ...........................9

*Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154 (S.D.N.Y. 2001)................................................9

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977).......................................1

*Ill. Tool Works, Inc. v. Foster Grant Co.*, 395 F. Supp. 234 (N.D. Ill. 1974), *aff'd*,
547 F.2d 1300 (7th Cir. 1976) ....................................................................................................8

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir.
1998) .....................................................................................................................................3, 4

*Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518 (S.D.N.Y. 1977).........................1

*Lewis v. Casey*, 518 U.S. 343 (1996)...........................................................................................2

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ...........................10

*Nat'l Ass'n of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267,
1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ..............................................................................3

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)............................................................2

*UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000)...........................5

*Warth v. Seldin*, 422 U.S. 490 (1975)..........................................................................................2

<u>Statutes and Rules</u>

17 U.S.C. § 107(4) .......................................................................................................................5

17 U.S.C. § 108(f)(4) ................................................................................................... 4

Fed. R. Civ. P. 15 ......................................................................................................... 7

Fed. R. Civ. P. 15(c) .................................................................................................... 7

Fed. R. Civ. P. 15(c)(1)(B) .......................................................................................... 7

Fed. R. Civ. P. 15(c)(1)(C) .......................................................................................... 7

**<u>Legislative History</u>**

H.R. Rep. No. 94-473 (1976) ....................................................................................... 4

S. Rep. No. 91-1219 (1970) ......................................................................................... 4

**<u>Other Authorities</u>**

Orphan works candidates list goes live," http://www.lib.umich.edu/news/orphan-
    works-candidates-list-goes-live (last visited Feb. 14, 2012) .................................. 6

Register of Copyrights, *Library Reproduction of Copyrighted Works* (January
    1983) ...................................................................................................................... 4

I.      **Associational Plaintiffs Lack Standing.**

Because Plaintiffs' Opposition fails to address Defendants' argument that the Copyright Act precludes associational standing (Defs.' Br. at 6-8), it is unnecessary for the Court to evaluate the *Hunt* factors.

A.      **Associational Plaintiffs Have Not Satisfied the First Prong of the *Hunt* Test.**

Even if the Copyright Act did permit associational standing, under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), each Associational Plaintiff must properly allege that at least one of its members has standing.[1] However, none of the Individual Plaintiffs are members of Associational Plaintiffs ALCS and TWUC, and the First Amended Complaint ("FAC") does not identify a single work held by one of their members.[2]

Plaintiffs argue that Rule 8 does not require them to "name names" in the FAC, citing a case under the Resource Conservation and Recovery Act and Clean Water Act (Pls.' Br. at 7), but that is not true for copyright infringement claims where claimants must identify the work infringed, the legal or beneficial rights holder of the work, and—for United States works—a valid copyright registration (Defs.' Br. at 9 (citing cases)). To hold otherwise would make it possible for "tens of thousands" (Pls.' Br. at 16) of unverified copyright holders of unidentified works to sue for copyright infringement where an individual copyright holder cannot.[3] Neither the Copyright Act nor any theory of associational standing permits this.

---

[1] Defendants previously defined the "Associational Plaintiffs" to include eight associations (Defs.' Br. at 1. n.1), but Plaintiffs' Opposition clarifies that the Authors Fund is not seeking associational standing.

[2] The Associational Plaintiffs have disclosed in discovery that certain Individual Plaintiffs are members of Associational Plaintiffs The Authors Guild, NFF, SFF, ASA, and UNEQ, but their pleading with respect to these associations also is insufficient because they did not include these allegations in the FAC.

[3] The Associational Plaintiffs are correct that an association may bring a claim on behalf of itself if it is a "legal or beneficial owner" under Section 501 of the Copyright Act. Nevertheless, the Associational Plaintiffs have not made any allegations regarding works held by them in the FAC, and they cannot amend their pleading through their Opposition. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

**B.      Associational Plaintiffs Have Not Satisfied the Third Prong of the *Hunt* Test.**

Even if the allegations under the first prong of the *Hunt* test were deemed sufficient, the Associational Plaintiffs "can establish standing **only** as representatives of those of **their members who have been injured in fact**, and thus could have brought suit in their own right." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (emphasis added). Simply put, an association's standing is coextensive with the standing of its members. *Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association **actually injured**.") (emphasis added); *cf. Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross.") (eliminating injunction provisions addressing claims for which standing was not established).

**1.      Individualized Proof Is Required To Establish That Associational Plaintiffs' Members Hold Valid Copyrights.**

Plaintiffs argue that individualized proof is not necessary for their members' works because Defendants' "database of digitized works records the copyright status of each work" (Pls.' Br. at 9-10), but this statement mischaracterizes the information in Defendants' possession. Defendants admitted that their rights database "includes categorizations of copyright status." (Answer ¶ 70.) In many cases, and out of an abundance of caution, Defendants have assumed that a work is still subject to copyright protection only because they do not have enough information to conclude, however likely, that the copyright has lapsed (e.g., for failure to renew the initial term of copyright protection). Plaintiffs cannot rely on these "categorizations" to meet their burden of establishing valid copyrights, and Defendants should have the opportunity to develop individualized proof to rebut the copyright validity of such works. This requires the participation of the individual authors. Indeed, it has already become evident during limited

2

discovery that the Associational Plaintiffs are unwilling and unable to provide this information for their members. (*See, e.g.*, Petersen Decl. ¶ 2, Ex. A at 11-12 (admitting that The Authors Guild "neither collects nor maintains a record of each every Member Copyright for each and every one of its approximately 8,500 members"); ¶ 3, Ex. B at 6 (refusing to identify each work for which a member of The Authors Guild is a legal or beneficial copyright holder and the copyright registration number).

Plaintiffs attempt to distinguish *National Association of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267, 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997), which rejected associational standing, but Plaintiffs' argument misses the point. (Pls.' Br. at 10-11.) The scope of the Associational Plaintiffs' standing cannot exceed the rights held by their members, and thus who, if anyone, holds the copyright will always be a "central issue."

Indeed, the court in *AIME v. UCLA*, No. 10 Civ. 9378, slip op. at 7 (C.D. Cal. Oct. 3, 2011), in denying associational standing noted: "In order to establish a claim for copyright infringement, individual copyright owners' participation is necessary. This is because having the rights over a copyright is essential to establishing a copyright infringement claim." The Associational Plaintiffs' offer to provide a list of their members' works does not meet their burden of establishing the *prima facie* elements of copyright infringement, which includes a showing that their members hold a valid copyright in such works and, for United States works, that there is a valid copyright registration.

In dictum, the Second Circuit noted in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, that "**it might be** possible to frame **some form** of injunctive relief that affords protection for those author-members that [the Russian writers union] is willing to identify." 153 F.3d 82, 94 (2d Cir. 1998) (emphasis added) (commenting on the district court's refusal to issue an injunction).

3

First, a list of members "might be" sufficient to resolve who holds the copyright when, as in *Itar-Tass*, an association is a "legal or beneficial owner" of its members' copyrights by operation of foreign law. Most of the Associational Plaintiffs have admitted that they are not the legal or beneficial holder of any of their members' copyrights under foreign law.[4] Second, the validity of the copyrights was not contested in *Itar-Tass* because all of the works were recent news articles, whereas the works potentially at issue here include old works that may have lapsed into the public domain (e.g., due to a failure to renew or publish with proper copyright notice). Third, it was not necessary for the Russian writers union in *Itar-Tass* to identify copyright registrations because none of the works at issue was a United States work. A mere list of members, however, would not satisfy the requirement for Associational Plaintiffs such as The Authors Guild **to identify copyright registrations for their members' works**. (Defs.' Br. at 9 (citing cases).)

> ### 2.   Individualized Proof Is Required To Evaluate Fair Use.

Plaintiffs argue that Defendants activities are "expressly governed by Section 108, not Section 107." (Defs.' Br. at 12.) Section 108 expressly states, however, that "**[n]othing in this section . . . in any way affects the right of fair use as provided by section 107** . . . ." 17 U.S.C. § 108(f)(4) (emphasis added); *see also* H.R. Rep. No. 94-473, at 74 (1976) ("No provision of section 108 is intended to take away any rights existing under the fair use doctrine."); S. Rep. No. 91-1219, at 6 (1970) ("The rights given to the libraries and archives by this provision of the bill are in addition to those granted under the fair-use doctrine.").[5]

---

[4] Three of the four that Plaintiffs argue have standing under foreign law (Pls.' Br. at 17) have admitted that they are not a legal or beneficial copyright holder for any works alleged to have been infringed by Defendants. (Petersen Decl. ¶¶ 4-6, Exs. C-E at 5.) Associational Plaintiff ALCS alleged in its discovery responses that it is the legal and beneficial owner of its members works under the copyright laws of the United Kingdom. (*Id.* ¶ 7, Ex. F at 5.)

[5] Plaintiffs' sole authority to the contrary is a pre-Internet-era report from a former Register of Copyrights discussing the relationship between Sections 107 and 108 in the context of library photocopying. (Pls.' Br. at 12-13.) Even if this report carried any weight, it does not stand for the remarkable proposition that Section 107 has no application to this case. Indeed, the report itself states the opposite. Register of Copyrights, *Library Reproduction of Copyrighted*

Plaintiffs also argue that individualized proof of fair use is not necessary because Defendants themselves did not conduct an independent fair use analysis for each work. This argument is misplaced. Defendants believe fair use (and in some cases, other sections of the Copyright Act) permit all of their activities for all works in question. It does not follow, however, that if copyright law does not permit certain activities, then each and every such activity for each and every work necessarily is an unfair use or otherwise violates copyright.

The Associational Plaintiffs argue that *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000), and *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), support their attempt to obtain injunctive and declaratory relief as to thousands of works not before the Court, but in both cases, the court conducted a fair use analysis of **copyrighted works held by a plaintiff in the case**. As a result, the defendants were afforded the opportunity to take discovery and develop individualized proof regarding each of the works at issue. Similarly, in *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d Cir. 1994), the parties themselves came up with the list of works at issue, **each of which was held by one of the plaintiffs and therefore subject to full vetting during the discovery process**.[6]

## II.   Plaintiffs' OWP Claims Must Be Dismissed For Lack of Standing and Ripeness.

Plaintiffs misunderstand the OWP. First, the OWP has only investigated particular works to determine if they qualify as "orphan works"[7]; no works have been made available to any users through the OWP. (Defs.' Br. at 15.) Second, the planned uses of orphan works by the University

---

*Works* (January 1983) (noting only that "the fair use analysis [should] take into account the '108' copying which has already occurred").

[6] The Associational Plaintiffs also argue that even if some individualized proof were necessary, associational standing is not precluded because the proof is redundant. First, this is not true for copyright ownership and validity. The Associational Plaintiffs must offer proof with respect to each work at issue. Similarly, for example, whether a particular book is in-print or out-of-print and whether Defendants' uses affect "the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), requires evidence specific as to each work.

[7] As defined in the FAC an "orphan work" is a work "protected by copyright but whose rights holders cannot be located by procedures established by HathiTrust." (FAC ¶ 3.)

5

of Michigan ("UM") are much more limited than Plaintiffs state in their Opposition. For example, UM would only make an orphan work available if the UM library owns a print copy of the work in its print collection,[8] and availability will be limited to UM's students, professors, and other authenticated users and visitors of the libraries at UM's campuses. (FAC ¶ 65.) Finally, as Plaintiffs are aware, there is not even a list of **potential** orphan works at this time, and no works are being made available through the OWP.[9] (Defs.' Br. at 15-16.)

### A.    Plaintiffs Do Not Have and Never Had Standing.

To assert a claim of prospective[10] copyright infringement, the Copyright Act requires that the plaintiffs hold the relevant right under copyright; and Article III requires, *inter alia,* an imminent injury that is not conjectural or hypothetical. (Defs.' Br. at 14-15.) At the time of the initiation of this lawsuit, Plaintiffs did not have, and did not plead, standing that met these constitutional and statutory requirements. Indeed, Plaintiffs' initial Complaint did not identify a single copyrighted work that would be distributed or displayed through the OWP, thus failing to identify even a conjectural or hypothetical harm to a copyright held by one of the Plaintiffs.

In the FAC, Plaintiffs added allegations that four works had been identified and listed as "orphan works candidates."[11] (*See* FAC ¶¶ 13, 15, 29.) However, the FAC does not and cannot allege that merely "list[ing]" these works as "orphan works candidates" by posting their bibliographic information on the HathiTrust website is a copyright infringement. Moreover, the

---

[8] "Orphan works candidates list goes live," http://www.lib.umich.edu/news/orphan-works-candidates-list-goes-live (last visited Feb. 14, 2012).

[9] Plaintiffs' Opposition also misconstrues facts regarding the number of known in-copyright volumes in the HathiTrust Digital Library ("HDL"). (*See* Pls.' Br. at 2.) The website Plaintiffs cite does not state the number of HDL volumes protected by copyright; it includes an estimate of the number of HDL volumes in the public domain. It does not follow that the balance of the volumes in the HDL are protected by copyright, especially since so many pre-1963 works were not renewed. (*See* Defs.' Br. at 11 n.11.)

[10] Plaintiffs cannot and do not allege actual injury from conduct that has already occurred. (*See* Defs.' Br. at 15.)

[11] The FAC alleges that the copyrights in these works are held by four new Plaintiffs added to the FAC: Authors Fund, ALCS, and Jack R. Salamanca ("Salamanca"). (*See* FAC ¶¶ 13, 15, 29.)

FAC does not allege that these four works—or any other identified works in which Plaintiffs hold copyright—**will be** displayed or distributed through the OWP, such that an imminent, non-conjectural harm to a right **held by one of the Plaintiffs** could be found. Plaintiffs cannot make such an allegation because UM is still in the process of creating a more robust orphan works identification process. (Defs.' Br. at 15-18.)

### B. Rule 15(c) Does Not Save Plaintiffs' Claims From the Lack of Standing That Has Existed at All Stages of This Action.

First, Rule 15(c)'s purpose is to avoid the effect of a statute of limitations, not artificially fulfill constitutional requirements such as standing. *See e.g.*, *Doe v. O'Bannon*, 91 F.R.D. 442, 447 (E.D. Pa. 1981) ("The 'relation back' principle of Rule 15(c), however, cannot serve artificially to assist the plaintiff to meet the constitutionally mandated requirement of concrete adverseness where the plaintiff, in fact, failed to meet that requirement on the date that the claim was filed."); Fed. R. Civ. P. 15 advisory committee's note ("Relation back is intimately connected with the policy of the statute of limitations. . . . Again the chief consideration of policy is that of the statute of limitations . . . .").

Second, the FAC's added claims do not satisfy Rule 15(c)(1)(C), which requires that the amended claims "ar[rise] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The initial Complaint did not identify a single work that allegedly would be infringed through the OWP, and the alleged future infringement of new and distinct copyrights of Plaintiffs added in the FAC would involve different conduct, transactions, or occurrences. *See, e.g.*, *Collezione Europa U.S.A., Inc. v. Amini Innovation Corp.*, No. 06-4929, 2009 WL 2634648, at *3-4 (D.N.J. Aug. 26, 2009) (analogizing to patent law, finding infringement claims based on completely different copyrights did not "relate back"); *see also Ill. Tool Works, Inc. v. Foster Grant Co.*, 395 F. Supp. 234, 250-51 (N.D.

Ill. 1974), *aff'd*, 547 F.2d 1300 (7th Cir. 1976) ("An alleged infringement of one patent is not the 'same conduct, transaction or occurrence' as the alleged infringement of another patent.").

Finally, considering the FAC under the facts existing at the time of the initial Complaint, Plaintiffs still did not have or allege a non-conjectural imminent harm. At the time, UM had posted online a list of "orphan works candidates" in a further effort to identify their rights holders. There was no certainty that any works—let alone any specific work—would remain unassociated with a copyright holder for the ninety days UM intended to post the list, such that UM might make the work available through the OWP. Any alleged harm from the **potential** distribution or display through the OWP of a Plaintiff's work was merely conjectural, and indeed, was unlikely to occur, as credible information identifying a claimed rights holder would have resulted in removal of the work from the OWP.[12] (*Cf.* FAC ¶ 74.)

### C.   The Voluntary Cessation Doctrine Does Not Apply.

UM has not distributed or displayed any works through the OWP, let alone works in which Plaintiffs claim copyright. Thus, the allegedly unlawful activity has not (and cannot be) "ceased" for purposes of application of the voluntary cessation doctrine, as it has never occurred. Moreover, even if the voluntary cessation doctrine could be applied, whether or not UM has or will cease the OWP entirely would not be the relevant inquiry for determining the mootness of a particular Plaintiff's claim. Rather, the inquiry would be whether UM will or will not distribute through the OWP a work for which that Plaintiff is the copyright holder. In addition, UM's removal of its previous "orphan works candidate" list could not trigger the voluntary cessation doctrine because posting the list is not the allegedly unlawful activity. Rather, Plaintiffs allege

---

[12] UM's OWP process does not require copyright holders to "opt out." Credible information need not come from a claimed rights holder to result in removal of a work from the OWP.

that potential distribution through the OWP of yet identified works will be unlawful. [13] Because the purpose of the OWP is to identify orphan works (*see* FAC ¶¶ 3, 73), there can be no reasonable expectation that this would occur for works in which the Plaintiffs claim copyright, as claimed rights holders for those works have been identified, and therefore they are not considered orphan works under the OWP. (*Cf.* FAC ¶ 74.) *See Dean v. Blumenthal,* 577 F.3d 60, 64 (2d Cir. 2009) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."). Because the "allegedly wrongful behavior" never occurred, *a fortiori* it cannot "**re**cur." *Cf. id.*

### D.     Plaintiff's OWP Claims Are Not Ripe.

The works that UM may distribute through the OWP—and which would be the subject of Plaintiffs' claims—have not yet been identified, and it cannot be determined whether a Plaintiff holds the copyright in such a work. Thus, although the parties may be "diametrically opposed" generally regarding the legality of UM's planned uses through the OWP, determining Plaintiffs' claims at this juncture will require application of copyright law without concrete facts regarding the works that allegedly will be infringed (including the works' nature, copyright status, copyright holders, and markets), which are needed to decide copyright infringement and fair use to resolve Plaintiffs' claims. Asking the Court to adjudicate Plaintiffs' claims without these facts is a request that the Court issue an advisory opinion using hypothetical works to apply copyright law to UM's planned uses through the OWP. *See, e.g.*, *Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154, 159 (S.D.N.Y. 2001) ("Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies 'of sufficient immediacy and reality' and not 'hypothetical or

---

[13] Moreover, the withdrawal was not a strategic litigation ploy, but a part of UM's continuing development of its pilot OWP investigative process in response to feedback received about its process and identified candidates. *See E.I. DuPont de Nemours & Co. v. INVISTA B.V*, 473 F.3d 44, 47 (2d Cir. 2006) (considering relevant to the determination of mootness the fact that defendant's "cessation" was "not a unilateral action taken for the deliberate purpose of evading a possible adverse decision by this court.") (internal quotations marks omitted).

abstract dispute[s] . . . .' ") (internal citations omitted); *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) (finding unripe plaintiff's First Amendment challenge to hypothetical applications of a Board directive because a court "would be forced to guess at how [the Board] might apply the directive and to pronounce on the validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical"). As in *Connecticut v. Duncan*, 612 F.3d 107 (2d Cir. 2010), for example, the Court is likely to benefit from further development of concrete facts, and deferring review of Plaintiffs' OWP claims until they have arisen in a more concrete form will not cause Plaintiffs any hardship, as they have not suffered any harm from the OWP, and the OWP does not currently present any risk of imminent harm to Plaintiff's copyrights. *See id.* at 114-15 ("The mere possibility of future injury, unless it is the cause of some **present** detriment, does not constitute hardship.") (emphasis added).

DATED: February 17, 2012          Respectfully Submitted,
      New York, New York

/s/ Joseph Petersen
Joseph Petersen (JP 9071)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*