**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (JP 9071)
Robert Potter (RP 5757)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE AUTHORS GUILD, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>HATHITRUST, ET AL.,<br>Defendants. | Case No. 11 Civ. 6351 (HB) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION FOR COSTS AND ATTORNEYS' FEES**</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.     ARGUMENT AND CITATION TO AUTHORITY ...................................................... 1

     A.    The Libraries Are Prevailing Parties For Which the Copyright Act
          Provides For Awards of Costs and Attorneys' Fees .......................................... 1

     B.    Awarding Attorneys' Fees to the Libraries Will Advance the Purposes
          of Copyright Law ............................................................................................. 2

     C.    Plaintiffs' Claims Were Objectively Unreasonable ........................................... 3

     D.    Awarding Attorneys' Fees to the Libraries Will Compensate Them for
          Asserting Their Fair Use Rights ....................................................................... 7

     E.    The Award of Fees and Costs Sought by the Libraries is Reasonable
          and Appropriate ............................................................................................... 8

II.    CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arclightz and Films Pvt. Ltd. v. Video Palace Inc.* ("*Arclightz I*"),
    303 F. Supp. 2d 356 (S.D.N.Y. 2003) ............................................................... 8, 9, 12

*Arclightz and Films Pvt. Ltd. v. Video Palace Inc.* ("*Arclightz II*"),
    No. 01-CIV-10135, 2003 WL 22434153 (S.D.N.Y. Oct. 24, 2003) ......................... 8

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605 (2d Cir. 2006) ............................................................................... 2

*Chivalry Film Prods. v. NBC Universal, Inc.,*
    No. 05 Civ. 5627, 2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007) ........................... 8

*Crown Awards, Inc. v. Discount Trophy & Co.,*
    564 F. Supp. 2d 290 (S.D.N.Y. 2008) ................................................................ 7

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)............................................................................... 1, 2, 3, 7

*Harrell v. Van Der Plas,*
    No. 08 Civ. 8252, 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) ............................. 8

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).......................................................................................... 9

*Mallery v. NBC Universal, Inc.,*
    No. 07 Civ. 2250, 2008 WL 719218 (S.D.N.Y. Mar. 18, 2008) ............................. 8

*Mathis v. Spears,*
    857 F.2d 749 (Fed. Cir. 1988) .......................................................................... 10

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir. 1983) ............................................................................ 8

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984)......................................................................................... 6

*Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.,|*
    No. 03-CIV-8253, 2007 WL 840368 (S.D.N.Y. Mar. 21, 2007)............................ 10

*Williams v. Crichton,*
    891 F. Supp. 120 (S.D.N.Y. 1994) ..................................................................... 3

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.,*
    51 F. Supp. 2d 302 (S.D.N.Y. 1999) ................................................................ 10

**Statutes**

17 U.S.C. § 109 .............................................................................................. 4

17 U.S.C. § 121 .............................................................................................. 6

17 U.S.C. § 505 ............................................................... 1, 2, 3, 8, 12, 13

**Rules**

Fed. R. Civ. P. 54(d) ...................................................................... 1, 12, 13

As prevailing parties in this action, the defendants in the above-captioned action (the "Libraries") respectfully submit this memorandum in support of the Libraries' Motion for Costs and Attorneys' Fees pursuant to Fed. R. Civ. P. 54(d) and 17 U.S.C. § 505.

## INTRODUCTION

On October 10, 2012, this Court issued an opinion and order granting the Libraries' Motion for Summary Judgment and in part the Libraries' Motion for Judgment on the Pleadings. As such, the Libraries are "prevailing parties" to whom the court may award costs and reasonable attorneys' fees. Such an award is particularly appropriate in this case where the successful defense of the Libraries—all of whom are non-profit organizations—advances the purpose of the Copyright Act, which is to benefit the public through access to creative works. Moreover, Plaintiffs have unnecessarily and substantially increased the costs of defending the litigation.

## I.     ARGUMENT AND CITATION TO AUTHORITY

### A.     The Libraries Are Prevailing Parties For Which the Copyright Act Provides For Awards of Costs and Attorneys' Fees

Federal courts may award full costs and reasonable attorneys' fees to a prevailing party in any civil action brought under the Copyright Act. 17 U.S.C. § 505. The Supreme Court has held that this award must be "faithful to the purposes of the Copyright Act" and made available "to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994). Here, where the Court granted the Libraries' Motion for Summary Judgment, the Libraries clearly are prevailing parties within the meaning of the statute.

**B.** **Awarding Attorneys' Fees to the Libraries Will Advance the Purposes of Copyright Law**

In its decision in the *Fogerty* case, the Supreme Court recognized that the ultimate purpose of copyright law is "enriching the general public ***through access to creative works***," and therefore

> a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

510 U.S. at 527 (emphasis added).

Here, the Libraries' defense does exactly that. The Libraries enforced their rights under the Copyright Act to make nonprofit educational uses of copyrighted works and to provide print-disabled patrons an equal opportunity to research and access the vast amount of information in their collections. Indeed, the Court found that the Libraries' uses provide an "invaluable contribution to the progress of science and cultivation of the arts," Opinion at p. 22, and that "copyright law's 'goal of promoting the Progress of Science . . . would be better served by allowing the [the Libraries] use than by preventing it." Opinion at p. 21 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006)); *see also* Opinion at 21 ("[T]he two memoranda filed by amici further confirm that the underlying rationale of copyright law is enhanced by the HDL.").

The Libraries' successful defense advances the goals of copyright law by maintaining the public's right to use copyrighted works for educational and research purposes through the HathiTrust Service. Had the Libraries not defended themselves, these benefits to scholars and the blind would not have been available. An award of reasonable attorneys' fees to the nonprofit Libraries is appropriate under § 505 and Supreme Court authority.

2

**C.      Plaintiffs' Claims Were Objectively Unreasonable**

Objective unreasonableness of a party's claims is also a factor that may be considered in awarding attorney' fees under § 505. *See Fogerty v. Fantasy*, 510 U.S. at 535 n.19; *Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994). While the law of this Circuit is clear that a defendant's success on summary judgment does not *per se* require an award of costs and fees, a district court's opinion granting summary judgment to a defendant on all of a plaintiff's claims strongly supports a finding that the plaintiff's claim was objectively unreasonable, warranting an award of defendant's costs and fees. *Williams v. Crichton,* 891 F. Supp. at 122 ("Finding that Williams' claim was based on the comparison of 'highly selective, scattered details,' the Court granted Defendants' motion for summary judgment. The same finding supports the Court[']s determination on the present motion that William's claim was 'objectively unreasonable.' ") (internal quotation omitted). Here, the Court's findings underscore the objective unreasonableness of Plaintiff's infringement claims; the Court concluding, "I cannot imagine a definition of fair use that would not encompass the transformative uses made by Defendants' MDP." Opinion at p. 22.

The objectively unreasonable claims and arguments asserted by Plaintiffs throughout this litigation include the following:

- **The Orphan Works Project –** Despite the fact that the Libraries suspended the Orphan Works Project ("OWP") shortly after Plaintiffs filed their original Complaint, and despite the fact that it was clear that the works identified in Plaintiffs' Amended Complaint would *not* be made available through the OWP, Plaintiffs continued to pursue their claim that the OWP would infringe copyrights, even after the Libraries promised that they would provide Plaintiffs 120-days

advance notice before making *any* work available to patrons through the OWP. *See* Dec. 28, 2011 Declaration of Joseph Petersen (Dkt. No. 44), Ex. A. Plaintiffs could not provide this Court any facts regarding the OWP "as it *will* exist" if and when it ever moved forward; yet Plaintiffs continued to demand an injunction and declaration of infringement with respect to the project generally, "in the absence of crucial information about what that program will look like should it come to pass and whom it will impact." Opinion at p. 11 (emphasis in original). In effect, Plaintiffs were telling the Court to enjoin the Libraries from planning for or thinking about any possible OWP *ever*.[1] Such a claim is objectively unreasonable.

- **Section 108** – In the face of clear statutory language to the contrary, Plaintiffs brought a Motion for Partial Judgment on the Pleadings on the ground that the Libraries were precluded from relying on fair use (and other rights and limitations on copyright) and were restricted to their rights under Section 108. But, § 108(f)(4) flatly states "[n]othing in this section . . . in any way affects the right of fair use as provided by section 107"; and as the Court held, the Copyright Act is clear that "Section 108 provides rights to libraries *in addition* to fair-use rights that might be available." Opinion at p. 12 (emphasis in original). Plaintiffs' arguments to the contrary were clearly without merit and patently devoid of legal basis. Moreover, Plaintiffs cited no case law for their one-paragraph argument that Section 108 also eliminated defenses under the First Amendment and the "first sale" doctrine (17 U.S.C. § 109) , Section 110 (exemptions of certain

---

[1] Plaintiffs filed their lawsuit even though a meeting had been scheduled between Plaintiffs and the Libraries to discuss the OWP. Plaintiffs' choice to rush prematurely into court caused the Libraries to spend substantial amounts to defend themselves, or surrender their rights and forego the benefits to their students—sighted and blind.

performances and displays), and Section 121 (reproductions for the blind). The
fact that Plaintiffs failed to provide any support for this argument demonstrates its
objective unreasonableness.

- **Uses for the Blind** – Similarly, Plaintiffs summarily dismissed rights of fair use
  and other limitations under the Copyright Act that allow individuals with print
  disabilities to have access to in-copyright works. As the Court recognized,
  Plaintiffs' suggestion that print-disabled individuals could have asked permission
  of all of the rights holders whose works comprise the HathiTrust Digital Library
  "borders on the ridiculous," *see* Opinion at p. 18 n.25. The argument is even more
  unreasonable in light of Plaintiffs' demonstrated lack of consideration for how
  individuals with print disabilities might be able to access their works. *See*
  Petersen Summary Judgment Decl. (Dkt. No. 111), Ex. U (Cummings Dep.
  56:23-57:3, May 22, 2102: Q: "So, you do not believe the print disabled should
  have access to those works?" A: "No."); Ex. V (Rønning Dep. 80:21-25, May 29,
  2012: Q: "[Y]ou have no understanding of how a U.S. student . . . with a print
  disability would obtain access to your works." A: "No. Why should I?").

Plaintiffs also did not attempt to show any past, current, or expected
market harm from uses for the blind and print disabled, nor did they provide any
other evidence as to why such uses were not fair use. *See, e.g.,* June 29, 2012
Declaration of Joseph Petersen ("Petersen Summary Judgment Decl.") (Dkt. No.
111), Exs. A – Q (Plaintiffs' Objections and Response to Defendants' Second Set
of Interrogatories and Requests for the Production of Documents, Responses to
Request No. 11) and Exs. R – T (Responses to Request No. 7 (misnumbered in

Plaintiffs' responses)) ("Plaintiff is not claiming that any revenue or other earnings of any kind were generated or are expected to be generated in whole or part by the reproduction or distribution of copies of Plaintiff's work(s) 'for use by blind or other persons with print disabilities'. . . ."). In addition, as the Court noted, Plaintiffs cited no case law supporting their one-paragraph argument in their Motion for Partial Judgment on the Pleadings that Section 108 prevents libraries from asserting the rights provided in 17 U.S.C. § 121 (reproductions for the blind). Opinion at p. 14.

- **The Fourth Fair Use Factor: Impact on the Market for or Value of the Copyrighted Works** – Because the Libraries' uses were noncommercial, Plaintiffs bore the burden of establishing "by a preponderance of the evidence that some meaningful likelihood of future harm exists." Opinion at p. 19 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). Plaintiffs, however, admitted in discovery responses that they could not identify "any specific, quantifiable past harm."[2] The only arguments Plaintiffs presented regarding future harm and potential markets were purely speculative and conjectural. Opinion at pp. 20-21. As discussed above, with respect to the Libraries' provision of access to the print disabled, Plaintiffs offered no argument for past, current, or future harm.

- Further, in their initial Complaint and throughout the case, rather than asserting claims of infringement of specific identified works for which Plaintiffs could present evidence of copyright status and standing, Plaintiffs demanded an

---

[2] This inability is all the more striking since Plaintiffs had known about the Libraries' digitization efforts since 2004.

injunction prohibiting scholars and the blind from having access to tens of thousands of unidentified works. Such a position was not only improper in light of statutory standing requirements, as the Court found, but it also unnecessarily complicated the facts of the case and the Libraries' burden in defending themselves.

### D.   Awarding Attorneys' Fees to the Libraries Will Compensate Them for Asserting Their Fair Use Rights

An award of attorneys' fees will reimburse the Libraries for their expenses necessitated by Plaintiffs' suit and will encourage other parties similarly situated to defend meritorious positions in copyright litigation; in turn, that will promote a clearer demarcation of the boundaries of copyright law and maximize public access to copyrighted works to the full extent provided by the law, all of which are considerations approved for application to prevailing defendants. *See Fogerty v. Fantasy*, 510 U.S. at 527 & 544 n.19.

An award of attorneys' fees to the nonprofit university Libraries is particularly justified in this case because the Libraries were not (and of course, are not) selling the works at issue, and therefore stood to receive no monetary gain if they prevailed. The Southern District of New York has recognized that where a prevailing plaintiff's potential monetary recovery is small, an award of attorneys' fees is appropriate. *See Crown Awards, Inc. v. Discount Trophy & Co.*, 564 F. Supp. 2d 290, 295-96 (S.D.N.Y. 2008). In the spirit of treating prevailing defendants the same as plaintiffs, an award of fees to the Libraries would both deter plaintiffs from intimidating parties who are making lawful uses of copyrighted works and would embolden defendants—especially nonprofits—to stand up for their constitutional right of fair use.

### E. The Award of Fees and Costs Sought by the Libraries is Reasonable and Appropriate

The determination of what constitutes a reasonable attorneys' fee is within the broad discretion of the district court. *See Harrell v. Van Der Plas*, No. 08 Civ. 8252, 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009) ("The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case."); *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627, 2007 WL 4190793, at *1 (S.D.N.Y. Nov. 27, 2007) ("An award of attorney's fees is at the discretion of the district court . . .").

To determine the amount of an award of attorneys' fees under 17 U.S.C. § 505, courts in this Circuit employ the "lodestar" method, under which fees are determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Harrell*, 2009 WL 3756327, at *1; *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.* ("*Arclightz II*"), No. 01-Civ-10135, 2003 WL 22434153, at *6 (S.D.N.Y. Oct. 24, 2003). Under this method, the reasonable hourly rate for each attorney is assessed by comparison to "rates of lawyers of similar skill and experience in the community." *Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250, 2008 WL 719218, at *2–*3 (S.D.N.Y. Mar. 18, 2008). For a court to determine whether the number of hours charged by each attorney is reasonable under the circumstances, a prevailing party moving for attorneys' fees must support its request with contemporaneous time records that detail the hours worked and the nature of work performed by each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.* ("*Arclightz I*"), 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003) ("[T]he fee application must be supported by contemporaneous time records that specify, by attorney, the date, the hours expended, and the nature of the work done."). An award of fees should reflect not only the number of hours worked by each attorney, however, but also their level of skill and the

8

results achieved for their client. *Arclightz I*, 303 F. Supp. 2d at 364 ("In assessing the proper amount of fees, courts evaluate the amount of work, the skill involved and the results achieved."). Indeed, the U.S. Supreme Court has stated that the degree of success is an important factor in determining whether a requested fee award is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' ").

Here, while other attorneys and paralegals at the Libraries' counsel's firm were involved at various levels in the case, the Libraries seek an award of fees based only on the reasonable hours charged by partners Joseph M. Beck and Joseph Petersen, and associates Robert N. Potter, W. Andrew Pequignot, and Allison Scott Roach. October 26, 2012 Declaration of Joseph Petersen in Support of Defendants' Motion for Costs and Attorneys' Fees ("Petersen Decl.") ¶ 3. The current hourly rates charged for the work performed on the case by these attorneys are shown in the chart below,[3] *id.* ¶ 5, and are reasonable and well within the range of rates charged by New York copyright and litigation attorneys of comparable skill, experience, and reputation for the performance of similar services defending copyright infringement and unfair competition claims of the kind asserted by Plaintiff in this case. *See* October 23, 2012 Declaration of Roger L. Zissu ¶¶ 7 – 8; October 25, 2012 Declaration of Raymond J. Dowd ¶¶ 6 – 7.

---

[3] Exact billing rates varied over time, but the overall blended rate for each attorney did not exceed the rates identified in the above chart, and indeed, for time billed in 2011, each attorney's rate was lower. In addition, these rates include a discount on each attorney's standard billable rate, which was provided by Kilpatrick Townsend because of the Libraries' nonprofit status, resulting in fee amounts that were lower than would otherwise have been charged for the same services. *See* Petersen Decl., Ex. C.

| Attorney | Billed Rate |
|---|---|
| Joseph M. Beck | $656.25 |
| Joseph Petersen | $481.25 |
| Robert N. Potter | $393.75 |
| W. Andrew Pequignot | $345.63 |
| Allison Scott Roach | $328.13 |

In intellectual property cases, courts in this Circuit and elsewhere frequently use the survey of the American Intellectual Property Law Association (AIPLA) in determining a reasonable rate. *See, e.g., Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*, No. 03-Civ-8253, 2007 WL 840368, at *3 (S.D.N.Y. Mar. 21, 2007) ("In determining a reasonable rate, a court may refer to American Intellectual Property Law Association ("AIPLA") surveys.") (citing *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) ("As the law makes clear, the district court properly considered the [AIPLA] surveys")); *see also Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 304-305 (S.D.N.Y. 1999) ("In determining a reasonable rate, the court may refer to American Intellectual Property Law Association (AIPLA) surveys. . . . [A]lthough many of the plaintiffs' attorneys billed above the AIPLA rate, I find that the hourly rates were ball-park reasonable for New York City."). The rates for the attorneys listed above are consistent with the rates reported in the most recent AIPLA survey, as shown in the tables in Exhibit B to Mr. Petersen's declaration and reproduced below. *See* Petersen Decl. ¶ 6, Ex. B.

<u>From the 2011 AIPLA Report of the Economic Survey</u>

*Private Firm, Partner*

| | Average hourly billing rate in 2010 | | | | |
|---|---|---|---|---|---|
| | Number of individuals | Mean (Average) | First Quartile 25% | Media (Midpoint) | Third Quartile 75% |
| Location: NYC CMSA | 43 | $557 | $400 | $590 | $675 |

10

*Private Firm, Associate*

|  | Average hourly billing rate in 2010 | | | | |
|---|---|---|---|---|---|
|  | Number of individuals | Mean (Average) | First Quartile 25% | Media (Midpoint) | Third Quartile 75% |
| Location: NYC CMSA | 31 | $433 | $300 | $410 | $545 |

This information shows that both Mr. Beck's and Mr. Petersen's rates are within the range of private firm partners' billing rates in New York City (Consolidated Metropolitan Statistical Area ("CMSA")), and that Mr. Potter's, Mr. Pequignot, and Ms. Roach's rates are not only within the range of private firm associates' billing rates in New York City (CMSA), but are also below the mean (average) rate for such associates. *Id.*

The number of hours charged in this case by the Kilpatrick Townsend attorneys identified above are supported by invoices based on detailed contemporaneous time records, *see* Petersen Decl. ¶ 7, Ex. C, and the Libraries are seeking an award of fees only for the hours billed from October 3, 2011 through the date of oral argument on the parties' summary judgment motions (August 6, 2012). The hours reflected in these invoices[4] are reasonable for the appropriate defense of Plaintiffs' claims, particularly in light of the fact that the Libraries' counsel efficiently represented all five of the university Libraries in this case.

Counsel also sought to minimize discovery expenses. Although Southern District of New York rules limit the number and subject matter for interrogatories, in an effort to minimize the expenses of discovery, the Libraries proposed at the status conference broader and more extensive use of interrogatories, thereafter secured a stipulation from the Plaintiffs, and the Court

---

[4] The invoices upon which the Libraries base their request for attorneys' fees do not represent all of the work performed by the Libraries' counsel in this case, as Kilpatrick Townsend has exercised its discretion in several instances not to charge the Libraries for certain time worked on the case. *See* Petersen Decl. ¶ 8. The Libraries also are not seeking reimbursement for the work done by the Libraries' in-house counsel, all of whom devoted substantial time and effort to the case.

thereafter approved such use. *See* Nov. 18, 2011 Stipulation, "So Ordered" by the Court on November 22, 2011 (Dkt. No. 19). Thus the Libraries served three sets of interrogatories and took only 4 depositions, even though they were sued by twenty Plaintiffs. As the Court is aware, the Libraries experienced resistance in seeking to schedule depositions of named Plaintiffs. *See* May 14, 2012 Endorsed Letter from Joseph Petersen (Dkt. No. 68). Further, Plaintiffs who were deposed were unaware of the uses being made by the Libraries. *See* Petersen Summary Judgment Decl. (Dkt. No. 111), Ex. U (Cummings Dep. 19:3-9, May 22, 2012; Q: "[D]o you have any understanding of the use made by the libraries with respect to the digitized works in the HathiTrust Corpus?" A: "I don't know what uses they're making of it.") and Ex. V (Rønning Dep. 52:8-14, May 29, 2012; Q: "[D]o you have any understanding of the types of uses made by my clients with respect to the in copyright—the works that are presumed to be in copyright that are included in the HathiTrust digital library?" A: "No."). One would expect plaintiffs in a non-class-action lawsuit to understand how they were supposedly being harmed and how the harm was occurring ***before*** initiating the lawsuit.

The Libraries also seek to recover their costs. Section 505 of the Copyright Act gives the Court discretion to award a prevailing party's "full costs." *See* 17 U.S.C. § 505; *see also Arclightz I*, 303 F. Supp. 2d at 365 ("The Copyright Act allows the District Court, in its discretion, to award costs."). Courts may also award costs based on Federal Rule of Civil Procedure 54(d), which provides that, unless a federal statute, rule, or court order provides otherwise, costs "should be allowed to the prevailing party." *See* Fed. R. Civ. P. 54 (d); *Arclightz I*, 303 F. Supp. 2d at 365. Courts routinely award costs to prevailing parties in copyright cases. *Arclightz I*, 303 F. Supp. 2d at 365 ("Traditionally, although not required to do so, courts routinely award costs to the prevailing party in copyright cases.") (internal quotation marks

omitted). The total costs incurred by the Libraries between October 3, 2011 and August 6, 2012

defending against Plaintiffs' claims are itemized in specific detail in the invoices attached as

Exhibit C to Mr. Petersen's Declaration. Petersen Decl., Ex. C. In this motion, the Libraries are

seeking recovery only of the costs summarized below and in Mr. Petersen's declaration. *See*

Petersen Decl. ¶ 11, Ex. C.

| Costs Sought by the Libraries | |
|---|---|
| Document reproduction | $2,021.99 |
| PACER online document retrieval | $191.44 |
| Courier services | $104.50 |
| Federal Express services | $170.61 |
| Court reporting services and deposition transcripts | $11,807.43 |
| **TOTAL** | **$14,295.97** |

## II.   CONCLUSION

The fees and costs incurred by the Libraries in advancing the purposes of Copyright and

defending the nonprofit libraries against objectively unreasonable claims are reasonable and

appropriate. Accordingly, the Libraries respectfully request that the Court grants their Motion for

Costs and Attorneys' Fees for recovery of $1,715,966 in fees and $14,295 in costs, pursuant to

17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d).

DATED:  October 26, 2012
New York, New York

Respectfully submitted,

Joseph Petersen (JP 9071)
Robert N. Potter (RP 5757)
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Fax: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800

Atlanta, Georgia 30309-4530
Telephone: (404) 815-6044
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*