UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE AUTHORS GUILD, INC., et al.,                    :
                                                                       :
                                    Plaintiffs,             :          Index No. 11 Civ. 6351 (HB)
                                                                       :
            - against -                                      :
                                                                       :
HATHITRUST, et al.,                                      :
                                                                       :
                                    Defendants.         :
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' AND
INTERVENORS' MOTIONS FOR ATTORNEYS' FEES AND COSTS**

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Jeremy S. Goldman
Anna Kadyshevich
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
erosenthal@fkks.com
jgoldman@fkks.com
akadyshevich@fkks.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY........................................................................................ 4

LEGAL STANDARD................................................................................................ 6

ARGUMENT ........................................................................................................... 7

    I. Awarding Fees Will Not Advance the Purposes of Copyright....................... 7

    II. Plaintiffs' Claims Were Objectively Reasonable........................................ 9

        A.    Courts Routinely Deny Attorneys' Fees Where the Party Prevailed
               on Summary Judgment ................................................................ 9

        B.    Plaintiffs' Claims Had a Strong Factual and Legal Basis and
               Raised Novel Issues of Law........................................................ 11

               1.    Orphan Works .............................................................. 12

               2.    Section 108................................................................... 13

               3.    Fair Use ........................................................................ 15

               4.    Uses for the Blind ........................................................ 18

    III. The Intervenors Are Not "Prevailing Parties" Under the Copyright Act
       and Are Not Otherwise Entitled to Attorneys' Fees .................................. 19

    IV. The Fees Requested by The Defendants (and by Intervenors) Are
       Unreasonable on Their Face ..................................................................... 21

        A.    Standard for Awarding Fees ..................................................... 21

        B.    Should the Court Decide to Award Fees, a Hearing Regarding
               Google's Indemnification of Defendants and Other Issues is
               Warranted................................................................................. 23

CONCLUSION....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ARP Films, Inc. v. Marvel Entm't Group, Inc.*,
  952 F.2d 643 (2d Cir. 1991)............................................................................7

*Banff, Ltd. v. Federated Dep't Stores, Inc.*,
  841 F.2d 486 (2d Cir. 1988)..........................................................................12

*Barclays Capital Inc. v. Theflyonthewall.com*,
  No. 06 Civ. 4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010)....................22, 24

*Belair v. MGA Entm't, Inc.*,
  No. 09 Civ. 8870, 2012 WL 1656969 (S.D.N.Y. May 10, 2012)...........................10

*Berry v. Deutsche Bank Trust Co. Americas*,
  632 F. Supp. 2d 300 (S.D.N.Y. 2009)..............................................................23

*Blanch v. Koons*,
  485 F. Supp. 2d 516 (S.D.N.Y. 2007)............................................................2, 17

*Brown v. Perdue*,
  No. 04 Civ. 7417, 2006 WL 2679936 (S.D.N.Y. Sept. 15, 2006).........9, 11, 15, 18

*Buckhannon Bd. And Care Home, Inc. v. W. Va. Dep't of Health*,
  532 U.S. 598 (2001)....................................................................................20

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)....................................................................................16

*Canal+ Image UK Ltd. v. Lutvak*,
  792 F. Supp. 2d 675 (S.D.N.Y. 2011).....................................................11, 13, 16

*Chambers v. Time Warner, Inc.*,
  279 F. Supp. 2d 362 (S.D.N.Y. 2003)..............................................................20

*CK Co. v. Burger King Corp.*,
  No. 92 Civ. 1488, 1995 WL 29488 (S.D.N.Y. Jan. 25, 1995)................................11

*Crescent Publ'g Group, Inc. v. Playboy Enter., Inc.*,
  246 F.3d 142 (2d Cir. 2001)............................................................................22

*Diamond v. Am-Law Publ'g Corp.*,
  745 F.2d 142 (2d Cir. 1984)............................................................................7

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)................................................................................3, 7, 8

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
    820 F. Supp. 2d 569 (S.D.N.Y. 2011)...................................................................6

*Korman v. Giambra*,
    No. 01 Civ. 0369, 2003 WL 23350130 (W.D.N.Y. Oct. 17, 2003)........................................20

*Leibovitz v. Paramount Pictures Corp.*,
    No. 94 Civ. 9144, 2000 WL 1010830 (S.D.N.Y. July 21, 2000) ....................................10, 16

*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
    240 F.3d 116 (2d Cir. 2001)..........................................................................1, 7, 8

*Miroglio S.P.A. v. Conway Stores, Inc.*,
    629 F. Supp. 2d 307 (S.D.N.Y. 2009)..............................................................22, 23

*Muller v. Twentieth Century Fox*,
    No. 08 Civ. 2550, 2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) ...................................23, 24

*Nature's Enterprise, Inc. v. Pearson*,
    No. 08 Civ. 8549, 2010 WL 447377 (S.D.N.Y. Feb. 2010) .........................................22, 24

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
    No. 96 Civ. 4126, 2004 WL 728878 (S.D.N.Y. Apr. 6, 2004).....................................8, 9, 11

*Reinhardt v. Wal-Mart Stores, Inc.*,
    No. 07 Civ. 8233, 2008 WL 2704412 (S.D.N.Y. July 10, 2008) ........................................11

*Saulpaugh v. Monroe Community Hospital*,
    4 F.3d 134 (2d Cir. 1993) ............................................................................21

*Silberstein v. Fox Entertainment Group*,
    536 F. Supp. 2d 440 (S.D.N.Y. 2008)...................................................................10

*The Authors Guild, Inc. v. Google Inc.*,
    770 F. Supp. 2d 666 (S.D.N.Y. 2011)...................................................................3

*Vargas v. Transeau*,
    No. 04 Civ. 9772, 2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008) ..........................................24

*Wilder v. Bernstein*,
    965 F.2d 1196 (2d Cir. 1992)............................................................................20

*Williams v. Crichton*,
    891 F. Supp. 120 (S.D.N.Y. 1994)........................................................................9

*Williamson v. Pearson Education, Inc.*,
    No. 00 Civ. 8240, 2001 WL 1262964 (S.D.N.Y. Oct. 19, 2001) ...........................................17

**STATUTES**

17 U.S.C. § 108 ......................................................................................................... *passim*

17 U.S.C. § 121 ........................................................................................................19, 14

17 U.S.C. § 505 ......................................................................................................6, 7, 20

Fed. R. Civ. P. 54(d) .........................................................................................................7

**OTHER AUTHORITIES**

STEVEN J. HOROWITZ, COPYRIGHT'S ASYMMETRIC UNCERTAINTY,
    79 U. CHI. L. REV. 331, 332 (2012) .............................................................................8

## PRELIMINARY STATEMENT

This case, brought by twelve individual authors and eight non-profit authors rights organizations from around the world, presented the novel question of whether the Copyright Act permits libraries to partner with a commercial enterprise to digitize, copy, index, store and make various other uses of millions of copyright-protected books, including the free distribution of so-called "orphan works" to tens of thousands of people, without obtaining permission from any of the authors or others who hold copyright interests in those literary works.  Whatever one's ultimate view of the legality of Defendants' Mass Digitization Program ("MDP") or Orphan Works Project ("OWP"), there can be no question that this case presented numerous complex questions of first impression that helped to delineate the respective rights of creators and the users of their work, which is a hallmark of cases in which courts deny motions for attorneys' fees. *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001).

Judicial review is bringing much needed clarity to a range of open questions, including the reach and limitations of Section 108 of the Copyright Act, whether fair use permits the mass digitization of copyrighted books, whether fair use permits the distribution of "orphan works," and the interplay between the Chafee Amendment and fair use.  The matters of first impression raised by this litigation have generated enormous interest among scholars and practitioners of copyright law, fueled primarily by great uncertainty:  no one could predict how this Court, or Judge Chin in the related Google Books case, would come out on these issues because, as this Court recognized, "the facts here may on some levels be without precedent[.]"  Opinion & Order dated October 10, 2012, at 20 (the "Opinion").

Prior to Defendants' participation in the Google Library Project, no library had systematically digitized nearly all of the books in its collection, including books protected by copyright.  Indeed, before approaching the University of Michigan, Google had asked the

Library of Congress to participate in the program, but the United States Copyright Office turned Google away when it heard the corporation wanted to digitize copyright-protected books. Harvard University also declined Google's offer to digitize its massive library of copyrighted books.  In fact, when librarians at Harvard learned that Google would be digitizing UM's copyrighted books, they cautioned UM's librarians that UM had not "done much deep thinking on copyright issues."  Plaintiffs' Statement of Undisputed Facts ("UF") 7.  Other large technology companies with a strong interest in books and online searches, including Amazon, Microsoft, and Yahoo, similarly found the risks too great, never extending their digitization programs beyond the confines of public domain works.

Despite the absence of authority supporting the legality of the MDP, and despite Section 108 of the Copyright Act, which on its face does not allow the digitization activities proposed by Google, Defendants pressed ahead with the venture, relying upon the highly amorphous doctrine of fair use.  Defendants certainly were alert to the legal risks posed by cooperating with one of the world's largest corporations in the digitization of millions of copyright-protected books, many of which were still in print, and sharing those digitized copies with that corporation for its own commercial purposes.  The libraries' cooperative agreements with Google, with their broad cross-indemnifications, reflect a keen awareness that their endeavor would likely be challenged in litigation.  As Judge Stanton once observed in denying attorneys' fees to an artist who famously defended his appropriation art as fair use, Defendants "must accept the risks of defense, including the time, effort, and expenses involved."  *Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007).

Defendants – led by the University of Michigan –pushed the envelope even further by launching their controversial Orphan Works Project, mere months after Judge Chin had rejected

a proposed settlement of the Google Books case, stating that "the establishment of a mechanism for exploiting unclaimed books is a matter more suited for Congress than this Court" and that "questions of who should be entrusted with guardianship over orphan books, under what terms, and with what safeguards are matters more appropriately decided by Congress than through an agreement among private, self-interested parties." *The Authors Guild, Inc. v. Google Inc.*, 770 F. Supp. 2d 666, 677 (S.D.N.Y. 2011).

Although the Court ultimately determined that the MDP is protected as fair use and the issues presented by their OWP were not ripe for adjudication, this is not a case in which an award of attorneys' fees is appropriate. To the contrary, an award of attorneys' fees would frustrate the purpose of the Copyright Act by deterring authors and other rightsholders from bringing objectively reasonable lawsuits that cause "the boundaries of copyright law [to] be demarcated as clearly as possible." *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

For the reasons set forth herein, the merits of Plaintiffs' claims and the manner in which the parties litigated those claims strongly militate against awarding any attorneys' fees and costs in this action. Defendants do not maintain that Plaintiffs' arguments were frivolous, that any conduct by Plaintiffs was vexatious or that Plaintiffs did anything improper other than aggressively assert their legal claims. In fact, the entire case proceeded in a spirit of cooperation, with the parties working together to simplify the discovery process, minimize depositions, and avoid unnecessary disputes. Moreover, the award sought by Defendants and Intervenors is wholly unwarranted, excessive, and would frustrate, rather than serve, the purposes and policies of the Copyright Act. The Court should deny both motions.

3

**PROCEDURAL HISTORY**

The filing of this lawsuit followed Defendants' announcement in May 2011 that they were about to make so-called orphan works available for display and distribution as part of their Orphan Works Project.  Specifically, Defendant University of Michigan announced that it had unilaterally decided to proceed with a program to make works that had been digitized and included in the HathiTrust Digital Library available for the university's students, professors, and other users to view online, print, and download for free.  Subsequently, other Defendant Universities announced that they too would participate in this project and on July 15, 2011, Defendant HathiTrust published a list of 148 purported orphan works and announced that many of these would be made publicly available in 90 days (on October 13, 2011) unless rightsholders came forward to claim them.

Upon learning of Defendants' plan, and prior to the filing of this lawsuit, representatives of The Authors Guild reached out to the University of Michigan's counsel to express concern over the OWP.  *See* Declaration of Edward H. Rosenthal dated November 20, 2012 ("Rosenthal Decl."), ¶ 4 & Exh. A.  While the University of Michigan offered to discuss the OWP, it continued to press forward with its plans to display and distribute the copyright-protected "orphan works."  Despite The Authors Guild's specific request, the University of Michigan would not delay implementation of its OWP.

It was only after the case was filed, and authors and their representatives quickly presented Defendants with evidence of deep procedural flaws in the OWP, including that works by living authors, works that were still in print, works by authors represented by literary agencies and readily findable heirs had been included among the purported orphans, that Defendants suspended the program.  Moreover, because Defendants continued to state that the OWP would be reintroduced at any point, Plaintiffs considered bringing a motion for a preliminary injunction

to prevent the reintroduction of the program.  Finally, in mid-October, Defendants agreed that they would give Plaintiffs at least 120 days' notice prior to making any works available through the OWP, *see* Rosenthal Decl., ¶ 5 & Exh. B, obviating the need to seek preliminary injunctive relief.  While Defendants agreed to provide advance notice, they steadfastly refused to assure Plaintiffs that they would not restart the OWP, taking aim at new lists of copyright-protected literary works.  Indeed, throughout this litigation, including in depositions, Defendants continued to insist that they were revising their procedures with the goal of reinstating the OWP.  *Id.* ¶ 6.

Once the litigation commenced, the parties worked together to ensure that discovery would proceed expeditiously and efficiently.  As Defendants noted in their brief, at the initial scheduling conference before the Court, the parties agreed to obtain certain information by interrogatories, including information beyond the permissible scope of interrogatories under the local rule.  Depositions were kept to a minimum.  Plaintiffs deposed a total of five defendant witnesses (two on consecutive days in Berkeley California, two on consecutive days in Ann Arbor Michigan and one in New York) plus one witness from Google in San Francisco. Defendants took a similar number of depositions.  Plaintiffs did not press Defendants to identify, collect, review and produce mass volumes of electronic or other discovery.  Discovery disputes were kept to a minimum, and virtually all of them were resolved without Court involvement.  In short, Plaintiffs at all times conducted discovery in a manner that recognized that Defendants – universities invested in scholarship and learning -- were not inherently at odds with the authors of the world.  All parties conducted the case with a goal of teeing up the critical legal issues for the Court as quickly and as comprehensively as possible.  Defendants do not – and could not – contend Plaintiffs' conduct was in any way vexatious or designed to complicate or prolong the litigation.

Significantly, most of the Defendants in this case claim to enjoy sovereign immunity from any claim of monetary damages.  Plaintiffs did not make any claim for such damages against any of the Defendants (even against Cornell University, which probably is not immune from a damages award).  The remedy sought by Plaintiffs in this case was for a declaratory judgment with respect to the legality of Defendants' activities and a permanent injunction against their continuance.

One measure of the unpredictability of this lawsuit, and the novel issues it presents, is the intense attention it has drawn.  Scholars, copyright experts, commentators and interest groups have weighed in, and have done so from the day Plaintiffs filed suit, many commenting on its uncertain outcome given the numerous issues of first impression.  *See, e.g.*, Kenneth Crews (Director, Columbia University Copyright Advisory Office), *HathiTrust and the Litigation Path* (October 3, 2011) ("The scope and complications of the case make it especially unpredictable, and much has been written about the legal, constitutional, and procedural challenges that lie ahead.").  Attached to the Rosenthal Declaration are a small sampling of the many articles, blogs, notes about programs and comments about the case from many interested persons and groups.

## LEGAL STANDARD

Section 505 of the Copyright Act provides, in relevant part, that "the court *may* . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505 (emphasis added).  While prevailing plaintiffs and prevailing defendants are to be treated alike, "fees for prevailing parties under § 505 'are not automatic.'"  *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 573 (S.D.N.Y. 2011) (quoting *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 117 (2d Cir. 2002)).  In determining whether such an award is appropriate, the court may consider: frivolousness, motivation, objective unreasonableness (both in the factual and in

the legal components of the case) and the need in particular circumstances to advance

considerations of compensation and deterrence, so long as these factors further the purposes of

the Copyright Act. *See Fogerty*, 510 U.S. at 534 n. 4("attorney's fees are to be awarded to

prevailing parties *only* as a matter of the court's discretion") (emphasis added).  None of those

factors weighs in favor of awarding attorneys' fees here.[1]

## **ARGUMENT**

## I.   **AWARDING FEES WILL NOT ADVANCE THE PURPOSES OF COPYRIGHT**

The ultimate goal of an award of attorneys' fees must be to further the primary purpose of

the Copyright Act, which is "to encourage the production of original literary, artistic, and

musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. *See Diamond v. Am-*

*Law Publ'g Corp.,* 745 F.2d 142, 147 (2d Cir. 1984) ("the principle purpose [of the Copyright

Act] is to encourage the origination of creative works by attaching enforceable property rights to

them").  Accordingly, "the imposition of a fee award against a copyright holder with an

objectively reasonable litigation position will generally not promote the purposes of the

Copyright Act." *Matthew Bender & Co., Inc.*, 240 F.3d at 122 (citation omitted).  As shown

below, the individual authors and authors' rights groups that brought this lawsuit asserted claims

that were eminently reasonable; thus, an award of attorneys' fees against them would undermine

the purposes of the Copyright Act.  *See id.* (vacating award of attorneys' fees where publisher's

claims, though unsuccessful, were objectively reasonable).

Defendants suggest that they should be rewarded for pushing the boundaries of fair use

under the Copyright Act. *See* Defendants' Memorandum of Law ("Def. Mem.") at 2.  However,

---

[1] An award of costs is equally discretionary under Section 505 of the Copyright Act and
Fed. R. Civ. P. 54(d).  *See ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 651 (2d
Cir. 1991) (internal quotations omitted).

"because novel cases" like this one "require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim." *Matthew Bender*, 240 F.3d at 122 (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (denying fees to prevailing defendant in "important case" that helped to clarify the boundaries of fair use)).

Imposing a $2 million attorneys' fee award – or even a fraction of that amount – against Plaintiffs would have precisely the "chilling effect" of which the Second Circuit warned in *Matthew Bender*: authors and other rightsholders will be discouraged from bringing meritorious claims aimed at protecting, promoting and enforcing their legitimate copyright interests out of fear that losing will result in a significant financial penalty. "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the law's boundaries be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527. By bringing this lawsuit, the Court had the opportunity to render a judicial opinion on a novel, controversial and previously-untested question that has broad implications for authors and the public at large. Without a court decision on whether fair use permits libraries to digitize, store and use millions of copyright-protected books in their collections, neither authors nor the public would have judicial guidance as to whether such mass digitization activities were lawful, fueling the "deep uncertainty" that often plagues copyright law. STEVEN J. HOROWITZ, COPYRIGHT'S ASYMMETRIC UNCERTAINTY, 79 U. CHI. L. REV. 331, 332 (2012).

In short, the purposes of the Copyright Act would not be served by "compensating" Defendants for their attorneys' fees where a hard-fought litigation helped to clarify the respective rights of authors and secondary users of their work. *See Penguin Books U.S.A., Inc. v. New*

*Christian Church of Full Endeavor, Ltd.*, No. 96 Civ. 4126, 2004 WL 728878, at *5 (S.D.N.Y.

Apr. 6, 2004) (declining to award fees where Plaintiffs "established a prima facie case which, by

being subject to a successful defense, helped to delineate the specific parameters of prior

publication").  For this compelling reason alone, the Court should decline to award attorneys'

fees and costs in this case.

## II.     PLAINTIFFS' CLAIMS WERE OBJECTIVELY REASONABLE

In the Second Circuit, one of the "most significant factors" that "is given substantial

weight in determining whether fees are warranted" is whether the claims asserted by the

unsuccessful party were "objectively unreasonable."  *Brown v. Perdue*, No. 04 Civ. 7417, 2006

WL 2679936, at *4 (S.D.N.Y. Sept. 15, 2006).  Only those claims that plainly are "without merit

or otherwise patently devoid of legal or factual basis" are objectively unreasonable.  *Penguin

Books*, 2004 WL 728878, at *3.  Moreover, matters "involving novel or complex issues do not

warrant a court in making a finding of objective unreasonableness."  *Brown*, 2006 WL 2679936,

at *4 (citation omitted).  For the reasons set forth below, Defendants' attempt to characterize this

lawsuit as objectively unreasonable must fail.

### A.     Courts Routinely Deny Attorneys' Fees Where the Party Prevailed on Summary Judgment

Rather than demonstrating how Plaintiffs' claims were "patently devoid of legal or

factual basis" – a standard they could never meet – Defendants attempt to bootstrap their motion

to the Court's decision on the merits, arguing that "granting of summary judgment to a defendant

. . . strongly supports a finding that the plaintiff's claim was objectively unreasonable."  Def.

Mem. at 3.[2]  However, courts in the Second Circuit have "repeatedly rejected this argument,"

---

[2] Defendants' reliance on *Williams v. Crichton*, 891 F. Supp. 120, 121 (S.D.N.Y. 1994), is misplaced.  In that case, the court had rejected an author's claim that his children's picture book was substantially similar to Michael Crichton's *Jurassic Park*.  Unlike this case, which raised numerous novel and unprecedented issues of copyright law, the court in that case granted

holding that "it is not the rule that a party who is successful on summary judgment is automatically entitled to a finding that the other party's claims or defenses were objectively unreasonable." *Belair v. MGA Entm't, Inc.*, No. 09 Civ. 8870, 2012 WL 1656969, at *2 (S.D.N.Y. May 10, 2012).

Thus, in *Silberstein v. Fox Entertainment Group*, 536 F. Supp. 2d 440 (S.D.N.Y. 2008), plaintiff's claim for copyright infringement was denied on summary judgment and affirmed by summary order on appeal. *Id.* at 442. Defendants moved for attorneys' fees on the grounds that, *inter alia*, the finding of no substantial similarity and no access rendered the copyright claim unreasonable. *Id.* at 444. The court disagreed, even while recognizing that there were "limited similarities" between the characters at issue and that the plaintiff's evidence of access was "exceedingly weak." *Id.* (quotation omitted). In fact, the court denied attorneys' fees despite defendants' allegations that (1) plaintiff's motions for preliminary injunctions were intended to extort settlement; (2) plaintiff perjured herself at her deposition; and (3) plaintiff's motions for summary judgment and her position that a relevant arbitration was non-binding on the court were "baseless." *Id.* Instead, the court concluded that "there was sufficient factual predicate for plaintiff to believe that defendants had derived" their character from hers, supporting an objectively reasonable claim. *Id.*

Courts have similarly declined to award fees in cases where the claims were far more dubious and the issues not nearly as novel as those presented here. *See, e.g.*, *Leibovitz v. Paramount Pictures Corp.*, No. 94 Civ. 9144, 2000 WL 1010830, at *3 (S.D.N.Y. July 21, 2000) (denying attorneys' fees even though cases upon which plaintiff relied were "easily distinguishable"); *Brown*, 2006 WL 2679936, at *5 (denying fees even though opinion was a

---

attorneys' fees to the defendants, finding that the plaintiff's claims were "neither novel nor complex." *Id.*

sweeping rejection of all of [the author's] allegations of similarity" because "the court neither characterized [the] claims as frivolous nor stated that they were close to frivolous"); *Reinhardt v. Wal-Mart Stores, Inc.*, No. 07 Civ. 8233, 2008 WL 2704412, at *2 (S.D.N.Y. July 10, 2008) (denying fees notwithstanding court finding that it could not "characterize the plaintiff's claims as presenting novel or close issues or clarifying the boundaries of copyright law"); *CK Co. v. Burger King Corp.*, No. 92 Civ. 1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 25, 1995) (denying fees despite the court's conclusion that there were "no close similarities" between the works); *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 684 (S.D.N.Y. 2011) (finding objective reasonableness even where plaintiffs' claim of substantial similarity had mere "surface appeal").

**B.     Plaintiffs' Claims Had a Strong Factual and Legal Basis and Raised Novel Issues of Law**

Defendants do not assert that Plaintiffs' claims were frivolous or based upon improper motives, nor do they contest that Plaintiffs' claims raised novel and complex issues of copyright law.  Indeed, Defendants admitted to engaging in the mass, unauthorized and unprecedented digitization of entire copyright works, including works owned by Plaintiffs.[3]  Defendants, in the face of a rapidly-changing digital landscape, widespread online piracy, and diminishing revenues for authors, indiscriminately digitized millions of copyright-protected books, including works by authors from all over the world.  With legitimate copyright interests at stake, Plaintiffs brought an action in the good-faith belief that their claims were both objectively reasonable and possessed merit.  In so doing, Plaintiffs assumed substantial risk and expense, including their

---

[3] As the Court recognized, "Defendants concede that Plaintiffs have established a *prima facie* case of infringement as to some of [the] works" at issue.  Opinion at 14.  Courts have considered this fact as sufficient to demonstrate an objectively reasonable claim.  *See Penguin Books*, 2004 WL 728878, at *3 (that plaintiffs owned a purportedly valid copyright and defendants published plaintiffs' copyrighted material was "enough to establish a *prima facie* case and support an objectively reasonable legal claim to protect the copyright.").

own fees and costs.  They did so knowing that, given Defendants' sovereign immunity, prospective injunctive relief was the only available remedy.

Nevertheless, in order to justify their exorbitant fee, Defendants argue that several aspects of Plaintiffs' claims were purportedly unreasonable.  *See* Def. Mem. at 3-7.  As shown below, each claim was asserted on solid legal ground and does not approach the "unreasonable" standard.

### 1.    <u>Orphan Works</u>

Defendants argue that, because they suspended the OWP shortly after Plaintiffs' filed their Complaint and because none of the works identified in the Complaint were made available through the OWP project, Plaintiffs were unreasonable in proceeding with their claim.  Def. Mem. at 3.  When Plaintiffs commenced this lawsuit, however, Defendants had not suspended the OWP, indeed their planned distribution to potentially hundreds of thousands of users of Defendants' first set of supposed orphan works was only weeks away with the planned distribution of their second list of purported orphans scheduled to soon follow.  Thus, Plaintiffs had a good faith belief to take Defendants at their word, and that, absent an injunction, the full-text availability of these works was imminent.  Defendants' agreement to give Plaintiffs 120 days notice before displaying or distributing any supposed orphan works merely obviated Plaintiff's need to seek preliminary relief; Defendants stated intention to restart the OWP caused Plaintiffs to continue to press for permanent injunctive relief.  *See Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 493 (2d Cir. 1988) (where defendant has a stated intention and ability to sell the goods subject to the injunction, "there is an actual controversy ripe for adjudication").

Although the Court ultimately found that Plaintiffs' OWP claim was not ripe, it did not determine whether the OWP constitutes copyright infringement (*see* Opinion at 11 n. 14), instead stating that "after Defendants release the details of their new OWP and a revised list of Orphan

Work Candidates . . . [Plaintiffs] can request relief." *Id.* at 11. If this Court awards fees to Defendants here, Plaintiffs would be deterred from making any future effort to seek to stop a reinstated OWP for fear that Defendants would again simply "suspend" the program and then seek to punish Plaintiffs for seeking to vindicate their legal rights.   It simply cannot be reasonably said that Plaintiffs' claims against the OWP were patently devoid of factual or legal support.

      2.     **Section 108**

In their Motion for Judgment on the Pleadings,[4] Plaintiffs demonstrated that Defendants' MDP and OWP violated practically every express limitation set forth in Section 108 of the Copyright Act.  In denying Plaintiffs' motion, the Court did not disagree with Plaintiffs' position on the Section 108 violations, but held that the Court "need not decide if the MDP fits within the parameters of 17 U.S.C. § 108 because it unquestionably fits within the definition of fair use." Opinion at 22 n. 32 (citing 17 U.S.C. § 108(f)(4)).  Piggybacking on this approach, Defendants contend it was objectively unreasonable for Plaintiffs even to argue that the MDP exceeded the limits of Section 108 in light of the so-called savings clause in Section 108(f)(4) which provides that "nothing in [Section 108] affects the right of fair use as provided for by section 107."

It was and continues to be Plaintiffs' position that Section 108(f)(4) cannot be used to read the other provisions of Section 108 out of the statute, and that the very specific provisions in

---

[4] Both parties filed motions for judgment on the pleadings at a relatively early stage of the proceedings, believing that the facts alleged and/or admitted would lead to an early resolution of certain critical issues.  While the Court deferred consideration of these motions until the summary judgment stage, and ultimately denied Plaintiffs' motion, this cannot be the basis for an award of attorneys' fees to Defendants.  *See Canal+*, 792 F. Supp. 2d at 681 (cautioning that an "award [that] essentially punishes [a party] for availing itself of a right provided by the Federal Rules" is an abuse of discretion, since "[t]o allow fees on this basis would be to deter the exercise of rights afforded to litigants in federal court") (quoting *Matthew Bender.,* 240 F.3d at 122) (alteration in original).

Section 108 should, at a very minimum, guide the fair use analysis.  Whether or not that position is ultimately accepted, it cannot reasonably be said that Plaintiffs' position was "patently devoid of legal basis."  Def. Mem. at 4.[5]  Significantly, this is the first case to discuss Section 108 in any meaningful way, and the legislative history supported Plaintiffs' position.  As explained by the Copyright Office in a report discussing the meaning and effect of Section 108(f)(4), "much of '108' photocopying would be infringing but for the existence of that section, *thus leaving section 107 often clearly unavailable as a basis for photocopying not authorized by section 108*."  REGISTER OF COPYRIGHTS, REPORT OF THE REGISTER OF COPYRIGHTS, LIBRARY REPRODUCTION OF COPYRIGHTED WORKS (17 U.S.C. 108) 96 (1983) (emphasis added).[6]  The strong language in the 1983 Report, which was repeated in subsequent reports by the Copyright Office and other commentators, provided solid legal ground for Plaintiffs' position regarding Section 108.

The reach and limits of Section 108 have never been explored by the courts, much less in the context of mass digitization of millions of copyright-protected books.  Accordingly, this case presented novel and complex issues, which weighs heavily in favor of denying attorneys' fees in

---

[5] Defendants' arguments with respect to the availability of other defenses such as the First Amendment, Section 109's "first sale doctrine" under Section 109, and certain performances and displays under Section 110 are curious in that Defendants never articulated how any of those defenses were relevant to the case.  Reproduction for the blind, the subject of Section 121, was briefed extensively.

[6] The Court attempted to distinguish the Copyright Office statements by citing to an earlier House Report, which stated that "[n]othing in Section 108 impairs the applicability of the fair-use doctrine to a wide variety of situations involving photocopying or other reproductions by a library of copyrighted materials in its collections, *where the user request the reproduction for legitimate scholarly or research purposes*."  Opinion at 13 n. 17 (citing H.R. Rep. No. 9401476, at 78-79 (1976)) (emphasis added).  However, as shown by the language in italics, the House Report was commenting on reproductions requested by the user, not systematic reproductions initiated by the library without a user request.

this case.  *See Brown*, 2006 WL 2679936, at *4 ("cases with claims involving novel or complex issues do not warrant a court in making a finding of objective unreasonableness").

### 3.   <u>Fair Use</u>

In support of their argument that Plaintiffs' claims were objectively unreasonable, Defendants do not contend that Plaintiffs' position regarding the first three fair use factors – the character and purpose of the use, the nature of copyrighted material and the amount and substantiality of the material used – was unreasonable in any way.  *See* Def. Mem. at 6.  Instead, Defendants rely on the Court's statement that "I cannot imagine a definition of fair use that would not encompass the transformative uses made by Defendants' MDP" (Opinion at 22), and argue that Plaintiffs' claims with respect to the fourth fair use factor – market harm – were objectively unreasonable.  Def. Mem. at 6.  However, neither the Court's general statement, nor Defendants' attempt to trivialize the evidence of market harm presented by Plaintiffs, warrant an award of attorneys' fees.

*First*, Defendants acknowledge that they stored multiple copies of millions of copyrighted books stored in digital format on their servers for "preservation purposes."  And while the Court stated, as a general matter, that it viewed the "uses made by Defendants' MDP" as transformative, even the Court concluded that Defendants' "argument that preservation on its own is a transformative use is not strong." Opinion at 15 n. 19 (citing *Am. Geophysical Union v. Texaco*, 60 F. 3d 913, 924 (2d Cir. 1994)).

Although the Court determined that other uses, such as the indexing and search capabilities, were transformative, there is no binding precedent that addresses this question, and Plaintiffs continue to believe that the case law in other Circuits is distinguishable from the facts presented here.  As the Court recognized, "the facts here may on some levels be without

precedent."  Opinion at 22.  Indeed, no prior case presented a situation even remotely similar to

the one before the Court, where millions of copyrighted books had been digitized and copied.

*See Canal+*, 792 F. Supp. 2d at 683 ("a court should not award attorneys' fees where the case is

novel . . . because such a litigation clarifies the boundaries of copyright law.") (internal quotation

omitted).[7]  While the Court found that the Defendants' use was non-commercial, it

acknowledged that the relationship between the Defendants and Google is "potentially relevant

to the use of the works made by Google."  Opinion at 19 n. 27.  It is certainly reasonable, given

the complex and unprecedented nature of this relationship, for Plaintiffs to contend that the MDP

was for the Defendants' commercial advantage as well, particularly where Defendants were

receiving millions of dollars in "reimbursements" from Google.  *See* UF 55, 58.

       *Second*, fair use is a case-by-case inquiry that is intensely fact-driven and notoriously

unpredictable.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (fair use "is

not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for

case-by-case analysis").  The complexities of fair use were recently summarized by the Ninth

Circuit, which described the factors as "billowing white goo" and as "naught by a fairy tale."

*Monge v. Mia Magazine*, Inc. 688 F.3d 1164, 1171 (9th Cir. 2012) (internal quotations omitted).

The Court's finding that certain of the Defendants' uses were transformative does not lead to a

conclusion that Defendants are entitled to an award of attorneys' fees.  *See Leibovitz*, 2000 WL

1010830, at *5 (finding that defendant's work was "fundamentally transformative in nature," but

---

       [7] Remarkably, Defendants argue that they should be awarded fees in order to
"Compensate Them for Asserting Their Fair Use Rights."  Def. Mem. at 7.  But "fair use" is not
a right to be remedied, it is only a defense to be asserted to counter a *prima facie* claim of
copyright infringement.  If successfully "asserting" a fair use defense automatically entitled a
defendant to an award of fees, plaintiffs would be discouraged from asserting rights in their
copyrighted property and the public would be deprived of the important function served by cases
presenting novel and emerging issues, such as this one, that help clarify the boundaries of
copyright protection.

nevertheless denying attorneys' fees because plaintiff's claims were not objectively unreasonable); *see also Williamson v. Pearson Education, Inc.*, No. 00 Civ. 8240, 2001 WL 1262964, at *6,11 (S.D.N.Y. Oct. 19, 2001) (denying attorneys' fees even where "no reasonable jury could find that defendants' [use] is not fair use.").

*Third*, Defendants were well aware of the risks they were taking in relying on fair use to justify their unprecedented digitization and use of millions of copyrighted books.  Other prominent libraries, including the Harvard University Library and the Library of Congress, had declined to participate in the mass digitization of works in copyright; the Google Books case was pending and the proposed settlement had been rejected; and scholars had warned that the project might be illegal.  Under these circumstances, Defendants "must accept the risks of defense, including the time, effort, and expenses involved."  *Blanch*, 485 F. Supp. 2d at 518 (denying attorneys' fees where court found appropriating artist who prevailed on summary judgment was particularly aware of risks given the nature of this artwork and his experiences with prior litigations).

*Finally*, Plaintiffs presented substantial evidence that Defendants' conduct caused them actual and potential harm. Even if Plaintiffs' arguments did not carry the day in this Court, they cannot be viewed as frivolous or unreasonable.  As to actual harm, Plaintiffs argued that "[e]ach digital copy of a book that Defendants created . . . rather than [purchased] through lawful channels, represents a lost sale."  Plaintiffs' MSJ at 22.  While the Court opined that this argument "ignores the fact that purchase of an additional copy would not have allowed either full-text searches or access for the print-disabled individuals," (Opinion at 19), Plaintiffs contest that premise, and the Court's opinion does not address the sales lost from Defendants' creation and storage of non-transformative preservation copies.

In addition, Plaintiffs made specific arguments as to how the Defendants' use affected Plaintiffs' potential markets.  For example, Plaintiffs provided a detailed expert report from Professor Daniel Gervais explaining how collective management systems provide a market for licensing many of the uses at issue here.  Plaintiffs' MSJ at 25.  As Plaintiffs explained, far from "speculative," such licensing agreements already exist on an industry-wide basis abroad.  *Id.* Further, the Amended Settlement Agreement (the "ASA") in the Google Books case would have created a mechanism by which copyright holders could grant licenses for the uses proposed by Defendants.  *See id.* at 27.  It cannot be said, therefore, that Plaintiffs' were *unreasonable* in arguing that there is a ready market or means for industry-wide licensing.  *See Brown*, 2006 WL 2679936, at *5 (reliance on an expert report supported a finding of objective reasonableness).

### 4.        Uses for the Blind

Defendants claim that the Plaintiffs "summarily dismissed rights of fair use" for print-disabled individuals and "demonstrated a lack of consideration for how individuals with print disabilities might be able to access their works."  *See* Def. Mem. at 5.  This is a highly misleading characterization of Plaintiffs' argument.  Plaintiffs' Amended Complaint did not bring any claim or make any allegations against Defendants with respect to the availability of works for the print-disabled and did not threaten or bring any claim against any visually disabled – or indeed any – user of HathiTrust.  There is nothing on the record to suggest that the print-disabled ever were a target of Plaintiffs' claims.  To the contrary, Plaintiffs made clear in their briefs that they were "willing to work with the Intervenors to establish a system that grants the blind the access they seek."  Pl. Opp. to Def. MSJ at 20.

As was the case with the interpretation of Section 108 of the Copyright Act, the proper application of the Chafee Amendment, 17 U.S.C. § 121, and the intersection of copyright law with the Americans with Disabilities Act (the "ADA"), raised novel issues that, for all practical

purposes, had never been addressed by any court.  As recognized by the President of Intervor NFB, for example, no court had ruled on whether a university library may qualify as an "authorized entity" or whether digital text may constitute a "specialized format" under the Chafee Amendment.  *See* Marc Maurer, *Comments on the Topic of Facilitating Access to Copyrighted Works for the Blind of Persons with Other Disabilities*, Apr. 21, 2009, *at* http://www.copyright.gov/docs/sccr/comments/2009/maurer.pdf.  Once again, Plaintiffs should not be punished for having tested the meaning and reach of these statutory provisions.[8]

In all, Plaintiffs vigorously litigated a case that, on its merits, was complex, unprecedented, and is serving to clarify the boundaries of the Copyright Act.  Accordingly, the Court should exercise its discretion and decline to award fees to Defendants.

## III.   THE INTERVENORS ARE NOT "PREVAILING PARTIES" UNDER THE COPYRIGHT ACT AND ARE NOT OTHERWISE ENTITLED TO ATTORNEYS' FEES

Intervenors claim that they are entitled to over half a million dollars in attorneys' fees and costs, but they do not provide a basis for this extraordinary and unprecedented claim.  Indeed they do not even make their own arguments, instead incorporating by reference the arguments and legal authority cited by the Defendants.  *See* Intervenors Mem. at 2.  However, Intervenors wholly fail to establish, let alone justify, why they should be entitled to such an award, especially where their legal position was aggressively pressed by Defendants, who made the rights of the visually disabled a centerpiece of their fair use and other arguments.

---

[8] The driving purpose of the MDP was not the provision of material for the print-disabled.  Rather, the stated purpose of the MDP was to create a "shared digital repository" in the form of the HathiTrust.  *See* Opinion at 2.  Indeed, after the digitization and reproduction of millions of copyrighted works, only one Defendant chose to make material available to the print-disabled.  Pl. Opp. to Def. MSJ at 21.

Intervenors fail to cite to a single case where a defendant-intervenor was awarded attorneys fees pursuant to Section 505 of the Copyright Act.  Under § 505 of the Copyright Act, only the "prevailing party" may be awarded attorneys' fees.  The Supreme Court has held that a "prevailing party" is one where there is a "judicially sanctioned change in the legal relationship of the parties."  *Buckhannon Bd. And Care Home, Inc. v. W. Va. Dep't of Health*, 532 U.S. 598, 605 (2001).  The Supreme Court's analysis in *Buckhannon* has been extended to apply to the fee-shifting provisions in § 505 of the Copyright Act.  *See Chambers v. Time Warner, Inc.*, 279 F. Supp. 2d 362, 365 n. 4 (S.D.N.Y. 2003).  A party is not a prevailing party where it has failed to secure a judgment on the merits or a court-ordered consent decree.  *Id.* at 365.  Here, Intervenors are not prevailing parties because there was no judicially sanctioned change in the legal position of the parties.

While fees for intervenors have been awarded in the civil rights context, intervenors are not entitled to attorneys' fees where their efforts are "merely duplicative of those efforts" of the non-intervening prevailing party.  *Korman v. Giambra*, No. 01 Civ. 0369, 2003 WL 23350130, at *5 (W.D.N.Y. Oct. 17, 2003) (citing *Wilder v. Bernstein,* 965 F.2d 1196, 1204–1205 (2d Cir. 1992)) (declining to award attorneys' fees to the intervenor plaintiffs whose efforts "were merely duplicative" of the plaintiff's effort in advocating for a redistricting plan).  Here, some or all of Intervenors' arguments were asserted by the Defendants.  In their pleadings, memoranda and declarations, Defendants made numerous arguments that the provision of copyrighted works to the print-disabled through the HathiTrust was permissible as fair use and the Chafee Amendment.  *See, e.g.*, Def. MSJ at 14-16; Reply in Support of Defendants' MSJ at 8-10.  *See Wilder*, 965 F.2d at 1204-1205 ("[E]fforts by counsel for intervenors that merely duplicate those of the plaintiffs in effectuating the foster care children's civil rights should not result in an award of attorneys' fees.").

Finally, to the extent that Intervenors' arguments under the ADA were not asserted by Defendants, Intervenors still must establish that Plaintiffs' claims were objectively unreasonable. Given that the intersection between the ADA and the Copyright Act is almost entirely unexplored by courts, this lawsuit presented novel legal questions. For this additional reason, Intervenors' motion for fees should be denied.

## IV.   THE FEES REQUESTED BY THE DEFENDANTS (AND BY INTERVENORS) ARE UNREASONABLE ON THEIR FACE

Defendants request a fee award of more than $1.75 million, and use a significant portion of their submission to argue that their hourly rates and the time incurred are reasonable. Plaintiffs will not challenge the billable rates charged by Defendants. Plaintiffs do, however, question how Defendants possibly could have spent that much time. Document discovery was kept to a minimum, there was no complicated electronic discovery, virtually all disagreements were resolved amicably, and each side took only about five depositions. Defendants' request is particularly excessive in a case where Plaintiffs did not seek monetary damages. For the reasons set forth set below, if the Court is inclined to grant fees at all, the amount should be significantly reduced.

### A.   Standard for Awarding Fees

"The calculation of reasonable attorneys' fees is a factual issue whose resolution is committed to the discretion of the district court." *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 145 (2d Cir. 1993). The court should not take the prevailing party's request at face value in determining the reasonable fee. Rather, the court should look to what "a reasonable paying client, who wishes to pay the least amount necessary to litigate the case effectively would be willing to pay." *Nature's Enterprise, Inc. v. Pearson*, No. 08 Civ. 8549, 2010 WL 447377, at *9 (S.D.N.Y. Feb. 2010) (quoting *Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*,

522 F3d 182, 183 (2d Cir. 2008)).  The court, therefore, may reduce the actual amount expended by the amounts that are "excessive, redundant, or otherwise unnecessary."  *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010) (internal quotation omitted).  Moreover, the court must be sure that the fees awarded, if any, do not amount to a windfall to Defendants.  *See Crescent Publ'g Group, Inc. v. Playboy Enter., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001).  Specifically, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'"  *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Defendants' application for fees is clearly unreasonable, excessive and unwarranted, given the short length of the litigation and the streamlined manner in which discovery proceeded. Defendants claim to seek "a portion" of the fees incurred, but that "portion" comes to a staggering 3,987 billed attorney hours totaling $1,715,966.23 in claimed fees.  *See* Petersen Decl. ¶ 10.  Plaintiffs' counsel, by contrast, billed less than half as many attorney hours.  *See* Rosenthal Decl. ¶ 8.[9]

Moreover, Defendants' (as well as Intervenors') bills include unreasonably vague and block-billed entries and requests for costs.  Defendants, for example, block-billed roughly 800 hours of work in 2011 alone.  *See* Petersen Decl., Exh. C.  In such a case, a reduction in fees is appropriate.  *See Berry v. Deutsche Bank Trust Co. Americas*, 632 F. Supp. 2d 300, 306

---

[9] The Intervenor Defendants, against whom no claims were even brought, request fees for five attorneys and eight paralegals or law clerks, totaling $514,042.15.  *See* Goldstein Decl. ¶ 9. This amount is extraordinary, especially in light of the fact that no discovery was sought by Plaintiffs from Intervenors or *vice versa*, counsel for Intervenors did not attend any of the depositions taken by Plaintiffs or Defendants (other than calling into one deposition for approximately 2 hours), and the arguments they presented were substantially duplicative of those presented by Defendants.

(S.D.N.Y. 2009) ("Courts can reduce awards for block billing because commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities."); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (reducing block-billed fees because such fees "prevent the Court from determining whether the time expended was reasonable").[10]

The Court should therefore exercise its discretion to drastically reduce the "reasonable amount" of fees sought by the Defendants and Intervenors. *See Muller v. Twentieth Century Fox,* No. 08 Civ. 2550, 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011) (Chin, J.) (finding that defendants' voluntary reduction of requested fees from $432,077.45 to $150,000 was reasonable "in light of the belief that the lesser award will adequately serve the statutory goals of compensation and deterrence").

**B.      Should the Court Decide to Award Fees, a Hearing Regarding Google's Indemnification of Defendants and Other Issues is Warranted**

Given the extraordinary amounts sought, if the Court is inclined to award fees to Defendants and/or to Intervenors, Plaintiffs respectfully request that a hearing be held to explore the reasonableness of the requests and the equities of any fee award.  In light of Google's indemnification of the Defendant libraries for certain activities in connection with the MDP (UF 13-17), some or all of Defendants' fees may have been or will be paid by Google.  An investigation as to the extent to which Defendants' legal bills are covered by insurance also is warranted.

---

[10] The most egregious example of block billing is Intervenors' request for $109,443.75 in fees for attorney Peter Jaszi.  *See* Goldstein Decl. ¶ 9.  Moreover, many of Intervenors' requests for costs, such as legal research, conference calls, non-witness travel expenses, "discovery", "copy/fax/postage", and "court costs", are impermissible under Local Civil Rule 54.1, or too vague to discern.  *Id.* ¶ 10.

Finally, a court may reduce a fee award to reflect the relative financial strength of the parties.  *See Pearson*, 2010 WL 447377, at *11 (collecting cases).  *See also Muller*, 2011 WL 3678712, at *4.  "[T]he court may consider the defeated litigant's economic circumstances to determine whether a lesser sum assessed would fulfill the statute's deterrent purpose without subjecting the plaintiff to financial ruin."  *Vargas v. Transeau*, No. 04 Civ. 9772, 2008 WL 3164586, at *4 (S.D.N.Y. Aug. 6, 2008) (internal quotations omitted); *see also Barclays Capital Inc.*, 2010 WL 2640095, at *6-7 (reducing fees because "the economic disparities between the [parties] are considerable and given [the defendant's] relatively modest operations, a full attorney's fee award is not required to fulfill the Copyright Act's purpose of deterring further infringement").

Should the Court determine that fees are warranted in this instance, the modest operations of The Authors Guild, a largely dues-supported membership organization, weighs heavily in favor of a substantial fee reduction.  Awarding the excessive amounts requested by Defendants would substantially impair The Authors Guild's ability to act as an advocacy group for its members.  The Defendants, on the other hand, include some of the largest state-run university systems in the country, and have significantly greater resources.

## **CONCLUSION**

For the foregoing reasons, Defendants' and Defendant-Intervenors' motions for

attorneys' fees and costs should be denied.

Dated: New York, New York
        November 20, 2012

                                FRANKFURT KURNIT KLEIN & SELZ, P.C.

                                By: /s/ Edward H. Rosenthal
                                        Edward H. Rosenthal
                                        Jeremy S. Goldman
                                        Anna Kadyshevich

                                488 Madison Avenue
                                New York, New York  10022
                                Tel.:  (212) 980-0120
                                Fax:  (212) 593-9175
                                erosenthal@fkks.com
                                jgoldman@fkks.com
                                akadyshevich@fkks.com

                                *Attorneys for Plaintiffs*