**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (JP 9071)
Robert Potter (RP 5757)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: jpetersen@kilpatricktownsend.com

Joseph M. Beck (admitted *pro hac vice*)
W. Andrew Pequignot (admitted *pro hac vice*)
Allison Scott Roach (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE AUTHORS GUILD, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HATHITRUST, ET AL., <br><br> Defendants. | Case No. 11 Civ. 6351 (HB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR COSTS AND ATTORNEYS' FEES**

**TABLE OF CONTENTS**

I.     INTRODUCTION. ...........................................................................................................1

II.    ARGUMENT...................................................................................................................1

      A.     An Award of Fees Would Advance the Purposes of the Copyright Act. ................1

      B.     An Award of Fees Is Supported By the Objective Unreasonableness of
             Plaintiffs' Claims. .................................................................................................3

            1.     Plaintiffs' Positions on Fair Use Were Objectively Unreasonable..............4

            2.     Associational Standing...............................................................................5

            3.     Orphan Works Project.................................................................................6

            4.     Section 108.................................................................................................6

            5.     Uses for the Print-Disabled. .......................................................................7

      C.     The Amount of Fees Requested is Reasonable........................................................8

III.   CONCLUSION.............................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351 (S.D.N.Y. 2006)................................................................. 3

*Blanch v. Koons*,
    485 F. Supp. 2d 516 (S.D.N.Y. 2007)............................................................ 2, 3

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)......................................................................................... 1, 4

*Diamond v. Am-Law Publ'g Corp.*,
    745 F.2d 142 (2d Cir. 1984)............................................................................ 2, 3

*Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*,
    532 F.3d 620 (7th Cir. 2008) .............................................................................. 2

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)..................................................................................... 1, 2, 3

*Hnot v. Willis Grp. Holdings Ltd.*,
    No. 01 Civ. 6558, 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008)................................. 9, 10

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
    No. 03 Civ. 1548, 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ..................................... 10

*Matthew Bender & Co. v. West Publishing Co.*,
    240 F.3d 116 (2d Cir. 2001).................................................................................. 4

*Rodriguez v. McLoughlin*,
    84 F. Supp. 2d 417 (S.D.N.Y. 1999)....................................................................... 9

**Statutes**

17 U.S.C. § 108(f)(4) ............................................................................................. 6

**Other Authorities**

6 William F. Patry, *Patry on Copyright* § 22:210 (2012).................................................. 4

Peter Jaszi, *505 and All That—The Defendant's Dilemma*,
    55 Law & Contemp. Probs. 107 (1992)................................................................ 4

ii

I.      INTRODUCTION.

Whether or not the facts of this case were "novel," the law supporting the Libraries' fair

use position was clear. Transformative uses such as those made by the Libraries consistently

have been held to be fair since the Supreme Court decided *Campbell v. Acuff-Rose Music, Inc.*,

510 U.S. 569 (1994). On the critical fourth factor, Plaintiffs admitted they could not identify

"any specific, quantifiable past harm" (Op. at 20) and instead offered only rank speculation of

future harm. Their assertion that Section 108 trumped Section 107 was legally frivolous.

Plaintiffs filed claims on behalf of associations that lacked statutory standing (a point

they "repeatedly sidestepped or obfuscated" (Op. at 5 n.7)), and on behalf of individuals,

including an officer of Plaintiff Authors Guild, who admitted they were not familiar with the

Libraries' uses. They also asserted unripe claims based on hypothetical facts and arguments

barred by settled law. In short, Plaintiffs' claims were objectively unreasonable.

Putting this aside, the Libraries' defense also advanced the purposes of the Copyright Act

by providing guidance to other users of copyrighted works. For these reasons and others

discussed below, the Libraries should be awarded their attorneys' fees.

II.     ARGUMENT.

A.      An Award of Fees Would Advance the Purposes of the Copyright Act.

Plaintiffs argue that in bringing their unmeritorious claims they "helped to delineate the

respective rights of creators and the users of their work." (Pls.' Br. at 1, 3.) But as the Supreme

Court explained in *Fogerty*, "a successful defense of a copyright infringement action may further

the policies of the Copyright Act every bit as much as a successful prosecution of an

infringement claim by the holder of a copyright." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527

(1994). The Libraries' defense furthered the purposes of the Copyright Act by providing the

clarity that other users need to make similar uses for the public good.

Plaintiffs argue that a fee award could deter rights holders from asserting colorable claims. (Pls.' Br. at 3.) This "chilling effect" argument was used for years to justify the "dual standard" that prevailing plaintiffs were presumptively entitled to fees while prevailing defendants were required to show that the claims were frivolous or brought in bad faith. *Fogerty*, 510 U.S. at 521 n.6, 525. But the Supreme Court in *Fogerty* unanimously held that such a chilling effect, if it exists at all, could not justify treating plaintiffs and defendants differently. *Id.* at 525-27 (rejecting the one-sided view set forth in *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 148 (2d Cir. 1984), among other cases). Instead, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527.

Users of copyrighted works often need this encouragement more than rights holders because users lack the same incentives. As Judge Posner has noted:

> The successful assertion of a copyright confirms the plaintiff's possession of an exclusive, and sometimes very valuable, right, and thus gives it an incentive to spend heavily on litigation. In contrast, a successful defense *against* a copyright claim, when it throws the copyrighted work into the public domain, benefits all users of the public domain, not just the defendant; he obtains no exclusive rights and so his incentive to spend on defense is reduced and he may be forced into an unfavorable settlement.

*Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 532 F.3d 620, 625 (7th Cir. 2008). Here, Plaintiffs are eight international organizations and twelve successful authors seeking to establish new revenue streams for their own books and millions of books they purport to represent. They have substantial financial incentives to file lawsuits despite the potential litigation costs. The non-profit Libraries, on the other hand, have nothing to gain other than improving the public's access to these works and making them findable, which benefits the public and rights holders alike.[1]

---

[1] The Libraries do not suggest that every defendant is similarly situated. For example, the defendant in *Blanch v. Koons*, 485 F. Supp. 2d 516 (S.D.N.Y. 2007), a decision relied upon by Plaintiffs, was an appropriation artist who

Bona fide fair users of copyrighted works particularly need incentives equal to those afforded plaintiffs because any evidence of market harm under the important fourth factor is often exclusively within the rights holder's control. In fact, Plaintiffs acknowledge that other entities have shied away from digitizing in-copyright books for search because of the risks (Pls.' Br. at 2), not to mention the burden of unreimbursed attorneys' fees incurred in prevailing. As a result, the critical balancing function served by fair use is undermined.

Substantial infrastructure investments were required for the Libraries to make the fair uses for which they were sued—expenses that are not borne by the rights holders. If the prevailing Libraries are denied reimbursement of legal fees, other non-profits—fearful of million-dollar-plus litigation expenses—simply may not risk investing in similar fair uses that would benefit the public. On the other hand, reimbursing the Libraries some of their attorneys' fees will encourage others to invest and engage in fair uses that provide an equally "invaluable contribution to the progress of science and cultivation of the arts." (Op. at 22.)

**B.     An Award of Fees Is Supported By the Objective Unreasonableness of Plaintiffs' Claims.**

As Plaintiffs note, district courts in this Circuit have defined objective unreasonableness to include claims that are without merit or otherwise lacking in a legal or factual basis. (Pls.' Br. at 9.) A court has wide latitude in applying this standard, and an award of fees "lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006). But objective unreasonableness does not and cannot mean only frivolousness or bad faith, which was the prior standard rejected by the Supreme Court in *Fogerty*. *See Fogerty*, 510 U.S. at 521 & n.8 (rejecting prior Second Circuit standard applied in *Diamond*, 745 F.2d at 148, which required defendants to show that the plaintiff's claims were

---

incorporated other artists' works in his artwork for commercial gain, and some of his artwork had previously been found infringing. *Id.* at 518. The defendant's posture there was thus very different from the Libraries' in this case.

"objectively without arguable merit"); *see also* 6 William F. Patry, *Patry on Copyright* § 22:210

(2012) (noting that the standard for objective unreasonableness as applied by some courts could

easily be confused with the pre-*Fogerty* standard); Peter Jaszi, *505 and All That—The*

*Defendant's Dilemma*, 55 Law & Contemp. Probs. 107, 121 (1992) (noting that "an uncritical

application of the even-handed approach is likely to perpetuate, rather than fundamentally alter,

the pervasive plaintiff bias of the American law of copyright attorney's fees").

### 1.      Plaintiffs' Positions on Fair Use Were Objectively Unreasonable.

This Court's ruling demonstrates the objective unreasonableness of Plaintiffs' positions

on fair use, particularly on the first and fourth fair use factors.

For the first factor, the Libraries relied upon multiple analogous cases involving mass

copying for search purposes (namely, *Kelly*, *Perfect 10*, and *iParadigms*) that each found the use

in question, like the Libraries' uses, significantly transformative. Plaintiffs' opposition brief

mentioned these cases only once in their first-factor discussion, and then only in a footnote.

Plaintiffs instead relied upon cases that were "easily distinguishable." (Op. at 17 n.24.) Plaintiffs'

failure to challenge seriously as a matter of law the transformative nature of the Libraries' uses is

itself evidence of the objective unreasonableness of Plaintiffs' claims, especially given the

importance of transformative use to a finding of fair use.[2] *Campbell*, 510 U.S. at 579.

Plaintiffs' arguments claiming market harm under the fourth factor also were objectively

unreasonable, consisting only of speculation, as the Court found. (Op. at 20.) For instance:

(a)      Based on the unsupported statement of one witness, Plaintiffs contended that each

Library use resulted in a lost sale. But Plaintiffs could not identify **a single entity** paying for full-

text search or access for print-disabled individuals. (Op. at 19.)

---

[2] In contrast, in *Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116 (2d Cir. 2001), which Plaintiffs cite, the non-prevailing party had already secured a favorable ruling on the same issue in the Eighth Circuit. The Second Circuit deemed their efforts to press the same arguments to be objectively reasonable as a matter of law. *Id.* at 123.

(b)     Plaintiffs' Daniel Gervais speculated that CCC could license the Libraries' uses. But that speculation **was contradicted by CCC's own testimony** (as well as the Libraries' expert, Professor Bernt Hugenholtz). (Op. at 21.)

(c)     Plaintiffs' only evidence of possible security breaches was by an economist who acknowledged that **he was neither familiar with the Libraries' security protocols nor qualified to give an opinion on them**. (Op. at 19.)

(d)     Plaintiffs vigorously pressed these arguments despite admitting in interrogatory responses that **they could not identify "any specific, quantifiable past harm**." (Op. at 20.)

Plaintiffs argue that the "fact-driven and notoriously unpredictable" nature of fair use warrants denying fees. (Pls.' Br. at 16.) Under Plaintiffs' logic, courts would never award fees to defendants in fair use cases, which certainly would not serve the primary purpose of the Copyright Act to "promote the Progress of Science."

Plaintiffs further ask that the Libraries be denied fees because they were aware of the risk that they might be sued. (Pls.' Br. at 2, 17.) But that risk is no different than for any other defendant who seeks to assert a meritorious defense in the face of a threat—there is always a risk of being sued when using a copyrighted work without express permission. Essentially, Plaintiffs argue that defendants should presumptively be denied fees in copyright cases, restating the dual standard explicitly rejected by the Supreme Court in *Fogerty*.

### 2.     Associational Standing.

The procedural vehicle Plaintiffs chose for asserting their claims was unreasonable. Plaintiffs did not need to assert rights in millions of unidentified works in order to reach a ruling on fair use. Yet when pressed on their lack of statutory standing under the Copyright Act to assert these claims, the associational Plaintiffs offered no response whatsoever despite multiple opportunities. (Op. at 5 n.7 (noting that "Plaintiffs have repeatedly sidestepped or obfuscated"

the issue).) Plaintiffs argue that merely asserting a *prima facie* case of copyright infringement as to some of the works is sufficient to demonstrate an objectively reasonable claim. (Pls.' Br. at 11 n.3.)  If so, then under *Fogerty*'s even-handed approach, the converse must also be true: **Plaintiffs' failure to assert a *prima facie* case** with respect to millions of works (for which Plaintiffs lack standing) is also sufficient to demonstrate objective unreasonableness.

### 3.    Orphan Works Project.

Defendants had not, prior to the filing of this lawsuit (and still have not), identified **one single work** as an "orphan work" that will be made available to patrons through the Orphan Works Project ("OWP"). **That fact was plain on the face of the pleadings themselves**, as this Court recognized in granting the Libraries' motion for judgment on the pleadings. As a result, the Court held that Plaintiffs' claims were not ripe for adjudication because they sought "a ruling on the OWP as it *will* exist" at some undetermined time. (Op. at 11 (emphasis in original).) As the Court also noted, the "mere possibility" that one of the Plaintiffs' works might be identified as an orphan work and made available in the future is not enough. (*Id.* at 11-12.)

An award of fees here—where Plaintiffs knowingly brought unripe infringement claims based on unknown works, then vigorously pursued them despite suspension of the project—would properly give pause to over-aggressive plaintiffs making similarly unripe claims. At the same time, an award in this case would not deter any future plaintiff with a truly ripe claim—and standing to assert it—from pursuing a justiciable case.

### 4.    Section 108.

Plaintiffs' position that Section 108 of the Copyright Act precluded the Libraries from relying on fair use was not only objectively unreasonable, but frivolous. The statute itself clearly belies Plaintiffs' baseless position: "Nothing in this section . . . in any way affects the right of fair use as provided by section 107 . . . ." 17 U.S.C. § 108(f)(4).

Moreover, Plaintiffs were equally unreasonable and frivolous in asserting—without any analysis or case support—that Section 108 in effect preempted the Libraries' defenses under the First Amendment and every other provision of the Copyright Act. (Pls.' Mot. for Partial J. on the Pleadings at 1, 23.) The Court agreed with the Libraries on every Section 108 argument that the Court addressed, including the Libraries' arguments on § 108(f)(4) and § 108(g). (*See* Op. at 12-13 & n.15.) The Court saw no need to address Plaintiffs' other Section 108 arguments, as the HDL "unquestionably fits within the definition of fair use." (Op. at 22 n.32.)

Plaintiffs' motion was all the more unreasonable in light of the millions of unidentified works that Plaintiffs claimed to be at issue. To argue—as they did—that **none** of the Libraries' activities with respect to **any** of the (unidentified) works at issue were justified by **any** provision of the Copyright Act or the First Amendment was patently unreasonable.

### 5.    Uses for the Print-Disabled.

The relief Plaintiffs sought would have prevented print-disabled library patrons from having access to library holdings on par with that of their non-print-disabled peers (and would have denied the potential to expand this access to other university communities). Plaintiffs' offer "to work with Intervenors to establish a system that grants the blind the access they seek" (Pls.' Opp. to Defs.' MSJ at 20) rings hollow in light of the following:

(a)    Plaintiffs' assertion that access for the print-disabled does **not** require the digitization of works unless there is first a print-disabled patron's request. (Pls.' Opp. to Defs.' MSJ at 20.) But a sighted patron is free to browse a library collection without first identifying the works they need and making a specific request.

(b)    Plaintiffs' statement that print-disabled individuals could have asked permission of all of the rights holders whose works comprise the HDL. This Court called that argument "border[ing] on the ridiculous." (Op. at 18 n.25.)

7

(c)      Plaintiffs' deposition testimony disclaiming any concern as to how print-disabled individuals might be able to access their works:

Q:      "So, you do not believe the print disabled should have access to those works?"

A:      "No."

(Petersen MSJ Decl. (ECF No. 111), Ex. U (Cummings Dep. 56:23-57:3, May 22, 2012).)

Q:      "But you have no understanding of how a U.S. student . . . with a print disability would obtain access to your works."

A:      "No. Why should I?"

(*Id.*, Ex. V (Rønning Dep. 80:21-25, May 29, 2012).)

Plaintiffs admit that the Libraries' uses for the print-disabled benefit society (Pls.' Opp. to Defs.' MSJ at 42) and that uses for the print-disabled had no effect on the market for Plaintiffs' works.[3] Plaintiffs' argument that "exceed[ing] the allowances of Section 121" precludes reliance on fair use (*id.*) is just as unreasonable and frivolous as their similar argument about Section 108, *supra*.

## C.      The Amount of Fees Requested is Reasonable.

Plaintiffs concede the reasonableness of the billable rates charged by Libraries' counsel (Pls.' Br. at 21) and instead argue that the amount of time spent by Libraries' counsel is unreasonable because it is greater than that spent by Plaintiffs' counsel on this case. However, while Plaintiffs had at least six years to prepare for this litigation—counting back to Plaintiff Authors Guild's decision to bring suit against Google—the Libraries and their counsel had to invest considerable time gathering facts and conducting expedited research in anticipation of a threatened preliminary injunction motion. Further, although Plaintiffs were able to and did rely on the same expert testimony previously submitted by Plaintiff Authors Guild in its litigation

---

[3] "Plaintiff[s] [are] not claiming that any revenue or other earnings of any kind were generated or are expected to be generated in whole or part by reproduction or distribution of copies of Plaintiff[s'] work(s) 'for use by the blind or other persons with disabilities.'" (Petersen MSJ Decl. (ECF No. 111), Exs. A - Q (Responses to Request No. 11).)

against Google, the Libraries had to spend significant time and resources searching for,
identifying, and obtaining the testimony of experts to support their defense.

In addition, Plaintiffs brought overly broad infringement claims in this case, requiring
substantial analysis by the Libraries' counsel. For example, Plaintiffs' refusal to narrow—or
even identify—all of the works encompassed by their claims unnecessarily complicated the case
and increased the time spent by Libraries' counsel in all stages, including discovery. Further, the
Libraries' counsel did not bill the Libraries for all of the hours spent in their defense (having
written off substantial sums prior to billing), and the Libraries' motion does not seek recovery of
all of the time that was actually billed (which includes at least $135,000 not reflected in the
Libraries' fee application) or otherwise invested in this case (including countless unbilled hours
by the Libraries' in-house university attorneys).[4]

Contrary to Plaintiffs' assertions, "block billing is not automatically disfavored by courts
in this district." *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558, 2008 WL 1166309, at *6
(S.D.N.Y. Apr. 7, 2008) (denying request for an across-the-board fee reduction based on block
billing because there was no evidence that fee applicants' bills were unreasonable); *Rodriguez v.
McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (denying request for a reduction based on
block billing where the Court did not find the hours spent on the case to have been overstated).
Indeed, block billing is "a generally accepted billing practice" and such bills "comply with the
Second Circuit's requirement of specificity" because they "specify the date, hours expended, and

---

[4] Plaintiffs claim that any amount the Libraries recover from insurers or indemnitors should be considered in
determining whether to award the Libraries fees. (Pls.' Br. at 23.) But Plaintiffs cite no authority for their position.
Logically, and as a matter of fairness, the existence of insurance coverage or indemnification agreements with third
parties has no bearing on whether an award of fees is appropriate under the statute or whether the amount of fees
sought is reasonable. If the award of attorneys' fees is otherwise appropriate, Plaintiffs have no standing to claim
that they should benefit to the detriment of a third party indemnitor or insurer because the Libraries had the foresight
to obtain such coverage. To avoid any misunderstanding, however, the Libraries expressly represent that they will
not seek indemnification from any insurance company or any third party for any attorneys' fees recovered from
Plaintiffs, and to the extent they already have received insurance benefits or indemnification, such payments will be
reimbursed.

nature of the work done." *Hnot*, No. 01 Civ. 6558, 2008 WL 1166309, at *6 (citation omitted).

Courts generally order reductions for block billing "only where there was evidence that the hours

billed were independently unreasonable or that the block-billing was mixing together tasks that

were not all compensable, or not all compensable at the same rate." *Id.*; *accord J.S. Nicol, Inc. v.*

*Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 WL 4613752, at *5 (S.D.N.Y. Oct. 17, 2008)

("[T]his Court will not make an across-the-board reduction, because in general, the time entries

are entirely reasonable in context and are for comparable services."). Here, as in *Hnot,* where an

across-the-board fee reduction was denied, Plaintiffs "do not identify a single block-billed entry

that contains tasks that are themselves unreasonable or duplicative." No. 01 Civ. 6558, 2008 WL

1166309, at *6. Therefore, a reduction of fees is not warranted.

## III.   CONCLUSION.

For the foregoing reasons and those stated in their opening memorandum, the Libraries

respectfully reiterate their request for the Court to exercise its broad discretion to grant the

Libraries' motion for attorneys' fees and costs in the amount requested.

DATED:  December 6, 2012                   Respectfully submitted,
New York, New York

                                           /s/ Joseph Petersen_____
                                           Joseph Petersen (JP 9071)
                                           Robert N. Potter (RP 5757)
                                           KILPATRICK TOWNSEND & STOCKTON LLP
                                           1114 Avenue of the Americas
                                           New York, New York 10036
                                           Telephone: (212) 775-8700
                                           Fax: (212) 775-8800
                                           Email: jpetersen@kilpatricktownsend.com

                                           Joseph M. Beck (admitted *pro hac vice*)
                                           W. Andrew Pequignot (admitted *pro hac vice*)
                                           Allison Scott Roach (admitted *pro hac vice*)
                                           1100 Peachtree Street, Suite 2800
                                           Atlanta, Georgia 30309-4530
                                           Telephone: (404) 815-6044
                                           Facsimile: (404) 815-6555

Email: jbeck@kilpatricktownsend.com

*Attorneys for Defendants*

11